# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. E. R. LEVESQUE, JR., Minor.

UNPUBLISHED
October 23, 2018

Nos. 343133; 343134
Wayne Circuit Court
Family Division
LC No. 15-521423-NA

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

In Docket No. 343133, respondent mother appeals as of right the order terminating her parental rights to her son, the minor child, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g)[1] (failure to provide proper care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to parent). In Docket No. 343134, respondent father appeals as of right the same order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to parent). In both docket numbers 343133 and 343134, we affirm.

## I. STATUTORY BASES

Respondents argue that there was not clear and convincing evidence to establish statutory grounds for termination, namely, because each respondent eventually came into partial or full compliance with their treatment plans by the end of the termination proceedings. We disagree.

The trial court must find that a statutory ground for termination is established by clear and convincing evidence. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). A

---

[1] MCL 712A.19b(3)(g) was amended, effective June 12, 2018. See 2018 PA 58. Under the new version of the statute, statutory grounds to terminate exist when a parent, "although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58. As the order terminating parental rights was entered on February 23, 2018, before the amendment took effect, the prior language of the statute is applicable.

trial court's ruling that a statutory ground for termination was established is reviewed for clear error. *Id.*; see also MCR 3.977(K). "'A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made.'" *In re Schadler*, 315 Mich App at 408, quoting *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

On appeal, respondent father challenges the services provided during the lower court proceedings and appears to allege proper accommodations were not made pursuant to the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. The trial court's findings of fact regarding whether reasonable efforts towards reunification were made are reviewed for clear error. *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). The trial court's findings of fact "may be set aside only if, although there may be evidence to support them, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

## A. SPECIALIZED SERVICES

As an initial matter, respondent father merely asserts, in a cursory fashion, that the Department of Health and Human Services (DHHS) failed to provide reasonable, specialized services to him and the minor child, who is autistic. However, respondent father does not specify what services DHHS failed to provide and does not elaborate with regard to how he and his child were not properly accommodated. We recognize that in *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017), the Michigan Supreme Court ruled, in pertinent part, as follows:

> Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification. MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home").

> The Department also has obligations under the ADA that dovetail with its obligations under the Probate Code. Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC 12132. Public entities, such as the Department, must make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter . . . the service" provided. 28 CFR 35.130(b)(7) (2016).

> Absent reasonable modifications to the services or programs offered to a disabled parent, the Department has failed in its duty under the ADA to reasonably accommodate a disability.

The ADA defines "disability" as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 CFR 35.108(a)(1)(*i*). Respondent father did not assert that he had a disability that required specialized services in the lower court. He received social security insurance (SSI) benefits, and was unable to work due to injuries from a car accident, but he did not assert that he needed specialized services from DHHS related to his injuries to complete his treatment plan. He previously received SSI due to his auditory hallucinations, but it was discontinued, as was the prescription for his mental health medication. The SSI benefits he received at the time of the hearing were due to his stomach injury from a car accident. Additionally, respondent father did not request that he receive specific services related to the minor child's autism. Respondent father was ordered to complete specialized parenting classes, and he did. Samantha Moore, the foster care worker, testified that there were not many parenting classes or other services tailored to autism offered by DHHS. Respondent father testified on the last day of the evidentiary hearing that he had completed one class of an online course related to parenting autistic children, which he chose to complete on his own.

The record reflects that both respondents were offered specialized services to support the minor child with his special needs. For example, respondent father attended specialized parenting classes. Respondent mother was ordered to complete Infant Mental Health therapy starting in March 2016, during her visitation with the minor child. Respondent mother was ordered to attend this therapy during the time in which respondent father was living in Pennsylvania, and DHHS could not order any services for him out of state. Respondent father did not visit the minor child while he lived out of state. When respondent father returned to Michigan, he made no request for Infant Mental Health therapy, even after he started to regularly attend visitation. Thus, under the circumstances of this case, we are not persuaded by respondent father's contention that DHHS did not reasonably modify its services to accommodate respondent or the minor child, or that it did not undertake reasonable efforts to reunify respondent father with the minor child. *In re Hicks/Brow*n, 500 Mich at 86.

## B. MCL 712A.19b(3)(c)(*i*)

The trial court did not err in finding that MCL 712A.19b(3)(c)(*i*) provided a statutory basis for termination of respondents' parental rights. A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) if 182 days have passed since the initial dispositional order, and the trial court finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

As the order of disposition related to the minor child was entered on January 21, 2016, more than 182 days passed when the trial court found that statutory grounds existed pursuant to MCL 712A.19b(3)(c)(*i*) on the last day of the evidentiary hearing on January 30, 2018. The trial court did not err in finding by clear and convincing evidence that the conditions that led to adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the young age of the minor child. MCL 712A.19b(3)(c)(*i*). The minor child was brought into care due to substance abuse by respondents, the overdose of Brandon Levesque (Brandon), respondent father's nephew, in the home while the minor child was present, improper supervision, previous Child Protective

Services (CPS) referrals, and respondents' mental health issues. The basis for the trial court's reasoning that termination of respondents' parental rights was warranted pursuant to MCL 712A.19b(3)(c)(*i*) was that any progress respondents had made with regard to their treatment plans after two years of the minor child being in care was essentially too late, and the conditions leading to adjudication would not be rectified within a reasonable time given the minor child's young age.

Despite substance abuse and Brandon's overdose being primary reasons for the minor child coming into care, respondents continued to have drug issues throughout the course of the proceedings. Respondent mother missed approximately 40 drug screens in the two years that she had to comply with the treatment plan. When she started regularly screening in 2017, she had six positive results for Tetrahydrocannabinol (THC), and one positive result for cocaine. Throughout the proceedings, Moore was suspicious that respondent mother maintained a relationship with Brandon, or that he resumed living with respondent mother, but respondent mother denied it. However, respondent mother eventually completed a 30-day inpatient rehabilitation program. After her release, both of her drug screens were negative. A condition that brought the minor child into care was substance abuse, and respondent mother completed an inpatient rehabilitation program, attended follow up outpatient care, and tested negative after she was released. Although there is no guarantee that respondent mother will remain drug free, this condition was rectified. MCL 712A.19b(3)(c)(*i*).

However, another condition that brought the minor child into care was respondents' mental health issues. Respondent mother organized her own individual therapy, but never completed it or signed a release form for documentation verifying her participation. Respondent mother was prescribed medication for attention deficient hyperactivity disorder (ADHD), but this never appeared on her drug screens, and she admitted that she no longer took it. She testified at the evidentiary hearing that she wanted a new psychological evaluation after she completed the inpatient program. Thus, although respondent mother rectified the substance abuse issues that brought the minor child into care, she did not rectify the mental health issues because her mental health problems remained untreated. Therefore, the trial court did not err when it determined that statutory grounds existed pursuant to MCL 712A.19b(3)(c)(*i*) related to respondent mother.

The trial court also did not clearly err in finding that statutory grounds existed pursuant to MCL 712A.19b(3)(c)(*i*) regarding respondent father. Respondent father rectified the mental health issues that brought him into care. He completed psychological and psychiatric evaluations in Pennsylvania. Moore did not know whether he took any medications, but he testified that he was not prescribed any. He saw a psychiatrist once a month, and was attending therapy. However, respondent father was referred for a substance abuse assessment and treatment due to marijuana use. Respondent father only completed drug screens the few times that he was in Michigan for hearings in 2016, and missed 25 screens between February 2017 and July 2017. He screened positive for THC and cocaine, and then obtained a medical marijuana card. Respondent father missed six screens in between the dates of the first day of the evidentiary hearing and the second. These were considered positive screens. Although his positive screens after obtaining a medical marijuana card did not count against him, he continued to miss drug screens thereafter. Drug screens were necessary to see his levels of marijuana, as well as whether he was positive for other substances. His medical marijuana card did not rectify the condition that brought the minor child into care, and his failure to continue drug screening after

the evidentiary hearing began demonstrated that he could not rectify these conditions within a reasonable amount of time. MCL 712A.19b(3)(c)(*i*).

The trial court need only find clear and convincing evidence of one statutory ground in MCL 712A.19b(3) to terminate parental rights. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Thus, termination of respondents' parental rights was appropriate. *Id*. However, the additional statutory grounds addressed by respondents on appeal will be addressed herein.

## C. MCL 712A.19b(3)(g)

The trial court did not err when it found by clear and convincing evidence that MCL 712A.19b(3)(g) applied in this case. A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(g) if the trial court finds by clear and convincing evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." In addition, "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Pursuant to parent agency agreements, respondents were required to complete individual therapy, random drug screens, psychological and psychiatric evaluations, maintain their mental health and take prescribed medicine, maintain suitable housing and income, and keep in regular contact with the caseworker. Respondent father was referred for specialized parenting classes, and respondent mother was referred for Infant Mental Health therapy.

Respondent mother did not fully complete her treatment plan, although given two years to do so. Respondent mother obtained her own individual therapy at New Oakland Family Center, but never completed it, or signed a release form so DHHS could have documentation of her participation. Respondent mother was prescribed medication for ADHD, but it never appeared on her drug screens. She admitted that she stopped taking her medication. Although the court ordered her to have psychological and psychiatric evaluations at the court clinic, respondent mother also completed these at New Oakland. Respondent mother initially received substance abuse therapy at New Oakland, but ultimately completed an inpatient rehabilitation program. Upon her release, she continued outpatient therapy at Hegira in Livonia. She also attended alcoholics anonymous (AA) or narcotics anonymous (NA). She missed many drug screens over the two years, tested positive a few times, but regularly screened after rehabilitation with negative results. Thus, she was not in compliance with the therapy component of her plan, but she was compliant with the substance abuse components.

Respondent mother's home was always deemed suitable in home assessments that occurred in 2016 and 2017, but as of the last day of the evidentiary hearing, respondent mother resided in a Days Inn. She needed more time to save to pay to rent a home. Respondent mother did not maintain regular contact with Moore, and missed several hearings. Respondent mother worked at H&R Block at the time of the evidentiary hearing, but had no job lined up for after tax season. Respondent mother's visitation was ultimately suspended due to the minor child's serious misbehavior at the end of the visits. This demonstrates that respondent mother did not

benefit from the Infant Mental Health therapy that she participated in before visitation was suspended. Rather, it was determined that the minor child no longer needed Infant Mental Health therapy after visitation was revoked because his behavior improved. Thus, respondent mother's overall noncompliance with her treatment plan demonstrates that she cannot provide proper care and custody to the minor child. *In re White*, 303 Mich App at 710.

Respondent father ultimately came into substantial compliance with his treatment plan, but not until the time of the evidentiary hearing. He did not drug screen for the entirety of the time that he lived in Pennsylvania, and additionally, missed all the drug screens between the first and second dates of the evidentiary hearing. Respondent father started visitation in January 2017, but only started attending regularly in May 2017. Respondent father had a suitable home, and currently received SSI; however, there was a period before July 2017 that he was not working or receiving SSI. He completed specialized parenting classes. He also completed psychological and psychiatric evaluations on his own in Pennsylvania. Moore was unsure if respondent father took the prescribed medication that was recommended as a result of the evaluations. He regularly attended individual counseling since his referral in May 2017. However, it was very difficult for Moore to stay in contact with respondent father because she was given several different telephone numbers throughout the course of the proceedings. Respondent father completed a substance abuse assessment due to his marijuana use, and his individual therapy had a substance abuse component, but he later obtained a medical marijuana card. Although respondent father was in substantial compliance with his treatment plan, his medical marijuana card did not exempt him from screening, particularly because he tested positive for other substances in the past, and the substance abuse component was not completed. Thus, statutory grounds existed pursuant to MCL 712A.19b(3)(g).

There was clear and convincing evidence that there was no reasonable expectation that either respondent could provide proper care and custody to the minor child within a reasonable amount of time given his young age. MCL 712A.19b(3)(g). Respondent mother testified that she currently lived in a Days Inn, and would need more time to obtain her own suitable housing. Moore testified that it would take time to transition the minor child into respondent father's home comfortably. The minor child had borderline autism, global development delay, posttraumatic stress disorder (PTSD), emotional impairment, and ADHD. Thus, despite each respondent's compliance with some aspects of their treatment plan, there was no reasonable expectation that they could provide the proper care and custody that the minor child needed due to his disabilities within a reasonable amount of time. MCL 712A.19b(3)(g). A decision regarding a reasonable time for a parent to improve "appropriately focuse[s] not only on how long it would take [the] respondent to improve her parenting skills, but also on how long her . . . [child] could wait for this improvement." *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). Despite the minor child being in care for two years, respondents still needed more time before the minor child could be returned to their care. Thus, the court did not clearly err when it found that statutory grounds to terminate respondents' parental rights existed pursuant to MCL 712A.19b(3)(g).

### D. MCL 712A.19b(3)(j)

The trial court did not err in terminating respondents' parental rights related to the minor child under MCL 712A.19b(3)(j). A trial court may terminate a respondent's parental rights

under MCL 712A.19b(3)(j) if the trial court finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." In addition, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711.

There is clear and convincing evidence that the minor child would be harmed if he was returned to respondents' care. MCL 712A.19b(3)(j). As discussed under the previous statutory grounds, neither respondent ever came into full compliance with their treatment plan. Although respondent father had a medical marijuana card, he continued to miss drug screens. The minor child was born testing positive for opiates. Should he be exposed to further drug use by respondent father, he could accidentally come into contact with or ingest more illegal substances. Additionally, respondent mother did not have suitable housing by the time of the end of the evidentiary hearing. These were the remaining components of respondents' treatment plans that were not completed.

The trial court noted that the harm in this statutory ground includes mental, as well as physical, harm. There is a risk that the minor child would be mentally harmed if he was returned to either respondent's care. The minor child exhibited extreme misbehavior at the end of respondent mother's visits. He would run away, cry, and refuse to return to his placement in the caseworker's car. Respondent mother's visitation had to be cancelled due to the minor child's inability to handle the end of the visits, and respondent mother's inability to control his behavior. The minor child's behavior actually improved after visitation was suspended. His therapist discontinued his Infant Mental Health therapy because she determined that he no longer needed it. There were also instances during respondent father's visitation when the minor child became aggressive, including one instance when he accidentally stepped on respondent father's foot, and responded negatively to respondent father's reaction, and another instance in which the maternal aunt, with whom the minor child was placed, had to retrieve the minor child from underneath a table. There was a risk of mental harm to the minor child if he returned to respondents' care because they could not properly handle his behaviors. Neither respondent had experience dealing with an autistic child or attended the minor child's applied behavioral analysis (ABA) therapy. At the time of the evidentiary hearing, respondent father voluntarily completed one session of an online course regarding autistic children that was not recommended by DHHS or ordered by the court. Given the minor child's special needs and respondents' inability to handle them, the minor child could be at risk of harm if returned to respondents' care.

## II. BEST INTERESTS

Respondents also argue that termination was not in the minor child's best interests because the minor child was bonded to respondent mother, and would lose a chance of any future relationship with respondent father. We disagree.

A trial court must order the termination of a respondent's parental rights if the petitioner establishes a statutory ground for termination by clear and convincing evidence, and the trial court "finds from a preponderance of the evidence on the whole record that termination is in the [child's] best interest. *In re White*, 303 Mich App at 713. The trial court's best interests determination is reviewed for clear error. *Id*.

MCL 712A.19b(5) provides, "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." A trial court must weigh all of the evidence in making a best interests determination. *In re White*, 303 Mich App at 713. This includes many factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," as well as "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. (citations omitted).

It was in the minor child's best interests to terminate respondents' parental rights. MCL 712A.19b(5). Regarding a parental bond and ability to parent, respondent mother's visitation was terminated due to her inability to control the minor child's aggressive behavior. The minor child's behavior improved thereafter. Moore testified that the minor child no longer asked for respondent mother. Respondent father lived out of state for one year, and did not have any relationship with the minor child during that time. Respondent father was appropriate during visitation, and the minor child listened to his direction; however, the maternal aunt was called to get the minor child to come out from under a table during one visit, and respondent father could not properly comfort the minor child during his emotional meltdowns. Respondent father testified that he could only control the minor child's behavior "to a point." The minor child no longer looked to either respondent when he was hurt, upset, or in need of comfort. Additionally, respondents' compliance with their treatment plans and visitation history can only be described as sporadic and inconsistent at best, as discussed earlier in this opinion.

The minor child has borderline autism, global development delay, PTSD, emotional impairment, and ADHD. Due to the minor child's special needs, his need for permanency, stability, and finality is heightened. The minor child was in care for over two years. He was placed with the maternal aunt for a majority of that time. Although his behavior at school was described as "horrific" while living with the maternal aunt, there was testimony that on several occasions, the maternal aunt was called to calm and soothe the minor child. She comforted him when he had his behavior problems during visitation because respondent father could not. She was willing to plan long term for the minor child. After the evidentiary hearing, the maternal aunt was in the process of adopting the minor child. Pursuant to *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), placement with a child's relative weighs against termination pursuant to MCL 712A.19a(6)(a). However, the record reflects that the trial court noted the minor child's relative placement when making a best interests determination, and that the maternal aunt planned to adopt the minor child, and that the other factors discussed above outweighed this factor. Therefore, termination was in the minor child's best interests. MCL 712A.19b(5).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood