*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. J. HRYMECKI, Minor.

UNPUBLISHED
November 9, 2021

No. 357145
Bay Circuit Court
Family Division
LC No. 19-012944-NA

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's March 30, 2021 order terminating his parental rights to the minor child, SJH.[1] Respondent-father's parental rights were terminated pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), (h) (parent is imprisoned for such a period that the child would be deprived of a normal home for more than two years), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

This case began when emergency personnel were called to a motel room because SJH's mother was found unconscious as a result of a drug overdose while SJH was present in the room. Respondent-father was incarcerated at the time that this occurred, so SJH was placed in foster care. Respondent-father remained incarcerated for the duration of the case with an earliest release date of September 2022. Respondent-father participated in services that were available to him, but the onset of the pandemic and his incarceration limited his options. When SJH's mother failed to comply with or benefit from the case service plan, the Department of Health and Human Services (DHHS) sought termination of the parental rights of both parents.

---

[1] The parental rights of SJH's mother were also terminated pursuant to this order, but she is not a party to this appeal.

## II. DISCUSSION

Respondent-father first argues that petitioner failed to establish the statutory grounds for termination by clear and convincing evidence. We disagree. We review for clear error a trial court's finding "that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (quotation marks and citations omitted).

We note that we cannot affirm the lower court's finding that petitioner established MCL 712A.19b(3)(g) because the court, in so finding, applied an outdated version of this statutory provision. MCL 712A.19b(3)(g) was amended effective June 12, 2018. See 2018 PA 58. Under the version of the statute in effect before these proceedings were initiated, termination was appropriate if "[t]he parent, *without regard to intent*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) (emphasis added). However, under the current version of the statute, which was in effect at the time of the termination order, termination is appropriate if "[t]he parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58 (emphasis added). Because the court applied the previous version of the statute, it has not been established whether respondent was financially able to provide for the minor children's care and custody. However, "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Therefore, this error is not dispositive.

The termination of respondent-father's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*), which provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination pursuant to subsection (c)(*i*) is appropriate when "the totality of the evidence" supports a finding that the parent "had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Additionally, the court must find that "there is no reasonable likelihood that the conditions will be

-2-

rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). The determination of what constitutes a reasonable time includes both how long the parent will take to improve the conditions and how long the child can wait for the improvements to occur. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

At the outset of this case, the primary barrier to reunification with respondent-father was his incarceration and corresponding inability to provide care for SJH. Substance abuse, mental health, and stability were also identified as barriers to reunification. The termination trial was concluded approximately 16 months after the initial petition was filed, and the circumstances surrounding SJH's removal had essentially gone unchanged. Respondent-father remained incarcerated, and his earliest release date was not until September 1, 2022—approximately 17 months after the date of termination. Stability also remained an issue as respondent-father had failed to maintain communication with SJH and would need to find housing and employment upon his release from incarceration. Finally, while respondent-father appeared to be doing the best that he could to work on his mental health and substance abuse issues while incarcerated, it was impossible for DHHS to assess whether he would be able to maintain any meaningful progress when in the community and outside the prison setting. Respondent-father's earliest release date was not until September 1, 2022, and at that point respondent-father would need to find housing and employment while demonstrating continued sobriety and stability. Meanwhile, SJH was less than five years old, had been in foster care for most of his life, and had formed strong bonds with his foster family. Multiple witnesses testified that they supported termination of respondent-father's parental rights because SJH needed permanence and stability. Finally, it is undisputed that more than 182 days elapsed between the initial dispositional order and the termination trial, as is required by this provision.

Because respondent-father's incarceration was the primary barrier to reunification, it is important to note that incarceration cannot be the sole basis for termination of parental rights. An incarcerated parent "can achieve proper care and custody through placement of the child with a relative." *In re Baham*, 331 Mich App 737, 754; 954 NW2d 529 (2020) (quotation marks, citation, and alteration omitted). However, respondent-father failed to do so. Respondent-father argues that he anticipated that SJH would be cared for by respondent-mother and that he could not have anticipated that she would relapse. Regardless of whether this is true, the fact that respondent-father may have *attempted* to provide for SJH's care does not change that he failed to do so. Respondent-father did have a sister who expressed willingness to care for and perhaps adopt SJH. However, respondent-father never actually directed placement with his sister. In fact, he testified that he had never even spoken with his sister about the possibility of her taking custody of SJH. Respondent-father also had a cousin who, of her own volition, requested placement of the child, but she eventually retracted this request.

Because we affirm the court's finding that petitioner established MCL 712A.19b(3)(c)(*i*) we need not address whether the court's findings concerning the other grounds were erroneous.

Respondent-father next argues that the court erred by finding that termination of his parental rights was in SJH's best interests. We disagree. We review a trial court's finding that termination is in the child's best interests for clear error. *Olive/Metts*, 297 Mich App at 40.

If the trial court finds that a statutory ground for termination of parental rights has been established, it must order termination of parental rights only if it finds that doing so is in the best interests of the child. MCL 712A.19b(5); *Olive/Metts*, 297 Mich App at 40. In making this finding, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42. (citations omitted). Other factors that the trial court can consider include the parent's compliance with the service plan and the parent's visitation history. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). The trial court may choose termination of parental rights over placement with a relative if it finds that doing so is in the best interests of the child. *Id.* at 43. A best-interests analysis focuses on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

The trial court's finding that termination of respondent-father's parental rights was in the best interests of SJH was supported by the record. SJH did not have a strong bond with respondent-father, and SJH's foster mother was not certain that SJH even understood that respondent-father was his biological father. This problem was exacerbated by the fact that respondent-father contacted SJH only three times during the pendency of this case. DHHS was unable to assess respondent-father's parenting ability because of his incarceration, but even respondent-father acknowledged that the foster parents had done an excellent job caring for SJH. SJH was very close with his foster family and referred to his foster parents as mom and dad. Finally, the caseworker and SJH's therapist each testified that termination was in SJH's best interests because he needed permanence and finality, and the foster parents, who had been caring for SJH for most of his life, were willing to adopt SJH.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica