*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re KISER/RODRIGUEZ, Minors.

UNPUBLISHED
December 14, 2023

No. 366310
Wayne Circuit Court
Family Division
LC No. 2021-000517-NA

Before: LETICA, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor children under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), and (j) (reasonable likelihood the children will be harmed if returned to the parent). We affirm.

## I. BACKGROUND

In March 2021, Children's Protective Services investigated a complaint that respondent had physically abused ZK, her nine-year-old daughter. The assault was videotaped, and ZK suffered a black eye along with numerous bruises. Respondent reported a severe alcohol addiction and suffered from mental health issues. Respondent was hospitalized and her drug screen was positive for tetrahydrocannabinol and opiates. Respondent's children, ZK, XR, and GR, were placed in a safety plan with their maternal grandmother. Thereafter, petitioner provided additional services to respondent.

On May 11, 2021, XR and GR were returned to respondent. The next day, respondent contacted the worker, indicating that she was on the verge of a mental breakdown and needed a safe place for the boys to go. XR and GR were returned to their grandmother. Consequently, one of respondent's initial service providers reported that while respondent met her goals, she failed to benefit from the services provided.

In June 2021, the Department of Health and Human Services (DHHS) filed a petition seeking jurisdiction over respondent's children. In relevant part, the petition alleged that respondent, who had a history of alcohol and substance abuse, lost control while under the influence of alcohol and abused ZK, inflicting injury. Respondent also had a history of physical abuse against GR. Moreover, although respondent participated in services to address these issues,

-1-

she failed to benefit from them. Additionally, the petition alleged that during the 2019-2020 school year, ZK and GR attended school for only three days.

In August 2021, respondent pleaded no contest to certain allegations, including that she was observably drunk and high on an unknown substance when she struck ZK on the head multiple times with her hand, dragged ZK across the floor, and threw ZK on the couch. As a result, ZK suffered swelling to her head and a black eye. Also on that day, respondent was talking "in circles" and appeared to be hallucinating. Respondent's home was cluttered and messy, and there were concerns with holes in the exterior walls causing a draft. Finally, respondent acknowledged her inconsistency with the children's educational needs.

The trial court authorized the petition, exercised jurisdiction over the children, and continued their placement with their maternal grandmother. The trial court also ordered reasonable efforts toward reunification be made. Respondent was referred to court-ordered services, including parenting classes, supervised visitations, a psychiatric and psychological evaluation, individual therapy, individual counseling, substance abuse counseling, regular drug screens, stable housing, and income.

Numerous hearings were held over the years, and it became clear that respondent made no progress toward addressing her addictions, mental health issues, and lack of stable housing. In January 2023, DHHS filed a supplemental petition for termination.

In March and April 2023, a two-day termination hearing was held at which respondent requested an additional three to six months to comply with her court-ordered services. Instead, the trial court found that DHHS had established grounds for termination under MCL 712A.19b(3)(c)(i) and (j). The trial court also found termination of respondent's parental rights was in the children's best interests.

This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues the trial court clearly erred by finding a statutory ground to terminate her parental rights. We disagree.

### A. STANDARD OF REVIEW

"This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted). "A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses" *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

### B. LAW AND ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19(b)(3) has been proved by clear and convincing

evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). "The clear and convincing standard is 'the most demanding standard applied in civil cases[.]' " *Id.*, quoting *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Evidence is clear and convincing if it

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.*, quoting *In re Martin*, 450 Mich at 227 (quotation marks, citation, and brackets omitted).]

Only one statutory ground need be established for termination. See *In re Pederson*, 331 Mich App at 472. In this case, the trial court found that DHHS established two grounds for terminating respondent's parental rights, MCL 712A.19(3)(c)(*i*) and (j).

To terminate a parent's rights under MCL 712A.19b(3)(c)(*i*), the court must find that 182 or more days have elapsed since the issuance of the initial dispositional order, that "[t]he conditions that led to the adjudication continue to exist[,] and [that] there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." This Court has previously held termination was proper under (c)(*i*) where "the totality of the evidence amply supports that [respondent] had not accomplished any meaningful change in the conditions" leading to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Respondent does not dispute that more than 182 days had elapsed since the issuance of the initial dispositional order.[1] MCL 712A.19b(3)(c)(*i*). Instead, respondent argues that the trial court erred because the "[c]onditions leading to adjudication had drastically changed." To support this argument, respondent points to her own testimony at the termination hearing that she was "substance-free, was looking for a residence," "was committed to living a drug-free life style," "was willing to continue . . . therapy," "was willing to provide drug screens at her doctor's office[,]" "and had income to support the [c]hildren."

We recognize that respondent, who was then 34 weeks pregnant, testified that she had completed a majority of her parenting classes, had been sober for five and one-half months,[2] had stopped using marijuana for almost thirty days, had attended weekly individual therapy with a substance-abuse component, had sought to resume drug screening, and had made recent active efforts to secure appropriate housing. Respondent further testified that she could become fully compliant with her treatment plan if the trial court afforded her an additional three to six months.

---

[1] Nor could she. A judge signed the initial dispositional order on August 24, 2021, and respondent's parental rights were terminated 601 days later on April 16, 2023.

[2] Respondent offered no documentary support for this proposition despite referencing e-mails from her doctor.

The trial court, however, was not bound to accept respondent's testimony in light of the caseworker's testimony that the caseworker repeatedly referred respondent for services that respondent refused to engage in or never completed. For example, the worker referred respondent for parenting classes three or four times and respondent's testimony demonstrated that she still had not completed a parenting class at the time of the termination hearing. Similarly, the caseworker testified that respondent failed to participate in drug screens and failed to drug screen even after the caseworker attempted to arrange two additional opportunities for respondent to submit to a drug screen. Respondent herself recognized that she did not have housing or employment and had not addressed her mental health and substance abuse issues as the trial court ordered. In fact, the trial court concluded that respondent failed to contradict the caseworker's testimony that the only service respondent completed was engaging in the psychological evaluation.[3]

Contrary to respondent's argument, the record establishes that respondent had not accomplished any meaningful change in the conditions that led to adjudication. And DHHS presented evidence that respondent failed to substantially comply with, or benefit from, her court-ordered services. "Therefore, the record makes clear that, although petitioner met its obligation to provide reasonable reunification services to respondent, respondent did not uphold her commensurate responsibility to engage in and benefit from those services." *In re Smith*, 324 Mich App 28, 45; 919 NW2d 427 (2018). Respondent suffered from serious mental health and addiction issues that were not rectified during these lengthy proceedings. She was regularly terminated from therapy because she did not attend sessions. DHHS also referred respondent to services designed to address her substance abuse. This included offering respondent weekly random drug screens. Respondent either failed to submit to drug screens, or, on the rare occasion that she did submit, she tested positive. To the extent that respondent contends that she had over five months of sobriety, coinciding with her most recent pregnancy, respondent nonetheless failed to submit to two additional drug screens offered to her shortly before she testified at the termination hearing.

Importantly, respondent also failed to visit the children regularly and did not progress to unsupervised visits. And although the case service plan required respondent to obtain and maintain suitable housing and a legal source of income, she was without both for a majority of the proceedings, including on the day of the termination hearing. In sum, despite DHHS's numerous referrals for services, there was no credible evidence that respondent was able to overcome these substantial barriers to reunification.

The record also does not support respondent's argument that she would be able to rectify these issues within a reasonable time. During the termination hearing, respondent initially testified that she anticipated she could fully complete her case services plan within three months; however, she later revised this timeline to "maybe three to six months, not even a full six months." But, again, the record reflects that the caseworker made multiple referrals necessary to assist respondent

---

[3] Respondent did contradict the caseworker on the issue of the number of visitations she had with the children. And it appears that the children's grandmother had allowed respondent to spend time with the children. But, after respondent, her sister, and her mother engaged in an argument over respondent's suspected drug use while ZH was present, the children's grandmother reported that she did not "feel safe to have" respondent around her home due to respondent's behavior.

in addressing her significant barriers to reunification for almost two years. Unfortunately, respondent either refused to participate in most of these efforts or was demonstrably unsuccessful when she did. In light of respondent's history, the trial court, which was in the best position to determine respondent's credibility, rejected respondent's optimistic self-assessment about how long it might be before the children could safely be returned to her care. Accordingly, the trial court appropriately recognized that the children required permanency and stability, and could not wait an indefinite amount of time for respondent to improve. See *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991) (holding it is proper to consider how long it will take respondent to improve and how long the children can wait for such improvement).

On this record, we conclude that there is no merit to respondent's claim the trial court erred in determining that the conditions that led to the children's adjudication continued to exist nearly two years later, and that there was no reasonable likelihood respondent would rectify those conditions within a reasonable time. See MCL 712A.19(b)(c)(*i*).[4]

## III. BEST INTERESTS

Respondent next argues the trial court clearly erred by finding termination of her parental rights was in the minor children's best interests. We disagree.

### A. STANDARD OF REVIEW

We review "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *In re Mota*, 334 Mich App at 320 (quotation marks and citation omitted; alterations in original). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.* (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interest." *Id.* "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685

---

[4] Because termination was proper under MCL 712A.19(b)(c)(*i*), we need not consider the additional grounds upon which the trial court based its decision. See *In re Pederson*, 331 Mich App at 472. Nevertheless, for the same reasons we have discussed, the evidence presented below also supported the trial court's conclusion that termination was warranted under MCL 712A.19b(3)(j) ("[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.").

(2022) (quotation marks and citation omitted). When determining the children's best interest, the trial court should consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Id*. at 346-347 (citation omitted).]

The trial court should also consider the children's safety and well-being, and any risk of harm the child may suffer if returned to the parent. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). "A child's placement with relatives is a factor that the trial court is required to consider." *Id*. at 147 (quotation marks and citation omitted). Indeed, relative placement is an "explicit factor to consider in determining whether termination was in the children's best interests[.]" *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re VanDalen*, 293 Mich App at 142 (quotation marks and citation omitted).

Respondent contends that the trial court's best interest determination was clearly erroneous because she shared a bond with the children and the "[t]estimony at [t]rial indicated that the time for reunification was imminent." Although the evidence does support that the children and respondent were bonded at times during the lengthy proceedings, the trial court did not credit respondent's testimony that she would be able to fully complete her court-ordered services in three to six months given her lack of effort for the majority of these proceedings. Thus, respondent's noncompliance with her case service plan was a factor weighing in favor of terminating her parental rights.

The trial court also considered the children's need for permanence and stability. It expressed concern with the fact that respondent missed most of her drug screens and tested positive on those rare occasions when she provided a sample. Likewise, respondent had only recently begun to address her serious mental health issues. As a result, a preponderance of the evidence supported the trial court's finding that respondent could not provide the children with permanence and stability because of her unremedied struggles with addiction and mental health.

Moreover, the minor children did well during the two years that they were placed with their maternal grandmother. She was committed to their care, and they looked to her for comfort. Although placement with a relative weighs against termination and is a factor the trial court must explicitly consider, a court may still terminate parental rights if it finds termination is in the children's best interests. See *In re VanDalen*, 293 Mich App at 142. In this case, the trial court noted the children's relative placement and concluded

> that termination is in the best interest of the children given that no parent is close to reunification with the children[,] . . . no parent has shown a commitment of doing the same to the detriment of the children[,] and . . . any other plan gives the children

-6-

a false hope of reunification [where] neither parent [has] accomplished any meaningful change in conditions.

Thus, the trial court explicitly considered the children's placement with their maternal grandmother, and properly weighed the other relevant factors before concluding that termination of respondent's parental rights was in the children's best interests. See *In re Atchley*, 341 Mich App at 347-356. Notably, the court further recognized that termination would provide the children with the stability, finality, and permanence they required. Again, based on this record, we conclude that the trial court did not clearly err in its determination that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron