*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. ZAMORA, Minor.

UNPUBLISHED
October 07, 2024
9:46 AM

No. 370062
Genesee Circuit Court
Family Division
LC No. 20-136976-NA

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order of the trial court terminating her parental rights to her minor child pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood that child will be harmed if returned to parent).[1] For the reasons set forth in this opinion, we affirm.

## I. FACTUAL BACKGROUND

In October 2020, the Department of Health and Human Services (DHHS) filed a petition to remove the child from the care of respondent-mother. The petition was authorized. The child, at roughly two weeks old, was ultimately placed in the care of a relative. In September 2021, respondent-mother pleaded no contest to the allegations that she had tested positive for methamphetamine the day before the birth of her child and that the child was born presumptively positive for methamphetamine. Although respondent-mother participated in some of the ordered services and demonstrated a pattern of increasingly longer periods of sobriety, she ultimately relapsed several times throughout the proceedings. Access to parenting time during this period was progressively limited from an "open-door policy" with the child's relative placement to supervised visits at the DHHS office as a result of respondent-mother's inconsistency with attendance. During the course of the proceedings, respondent-mother was unable to secure stable

---

[1] During these proceedings, the trial court also terminated the parental rights of the child's unknown father. The father is not a party to this appeal.

housing, or a job. She mostly lived with her mother but had a history of getting kicked out of her mother's house and experiencing periods of homelessness and incarceration. Respondent-mother never provided proof of employment throughout the proceedings, only verifying that she received about $1,400 monthly from Social Security. DHHS indicated that it was not confident that respondent-mother's Social Security income was sufficient to support both the respondent-mother and the child. At an October 2022 hearing, DHHS informed the presiding referee that respondent-mother had recently been sentenced to 17 to 120 months' imprisonment for a probation violation for methamphetamine use. The referee suspended respondent-mother's parenting time, changed the permanency plan to adoption, and ordered the filing of a termination petition. After being released from incarceration in March 2023, a termination petition was filed for respondent-mother and any known or unknown fathers in April 2023. Despite several requests by respondent-mother to reinstate parenting time, her requests were denied due to the pending termination hearing. The termination hearing for respondent-mother was adjourned until November 2023 as DHHS had difficulty obtaining relevant records.[2] In November 2023, the parties agreed to start the hearing without the records and to continue it in January 2024, giving DHHS more time to obtain the records. In December 2023, respondent-mother relapsed, leading to the adjournment of her termination hearing until February 2024.

At the February 2024 termination hearing, a caseworker testified about respondent-mother's December 2023 arrests for methamphetamine use. Although respondent-mother was, again, completing her service plan, the DHHS worker testified that respondent-mother had not seen the child in a year and a half, that they lacked a bond, that respondent-mother had not rectified her substance abuse addiction, and that she did not believe that respondent-mother would do so in the "near future."

The relative placement testified that she was a stay-at-home mom, that she gave her "undivided attention" to the child, that the child was over three years old at the time of the hearing, that her family had raised the child "just like another one of the kids at the house," and that the child had a bond with her and the family. The relative placement also testified that the child had begun to demonstrate some developmental delays and that she ensured that he received all necessary care.

The relative placement and DHHS worker opined that termination of respondent-mother's parental rights was in the best interests of the child because respondent-mother had not resolved her struggle with addiction and returning the child to respondent-mother's care could place the child at risk of harm. Respondent-mother admitted to her struggle with substance abuse. Respondent-mother testified that she received $1,480 per month from Social Security, that she lived with her mom, and that there was enough room in their house for the child.

The trial court found that DHHS had established by clear and convincing evidence that termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*),

---

[2] The parental rights of any known or unknown father were terminated at an August 2023 hearing, which was adjourned due to the absence of records.

(g), and (j) and that termination of respondent-mother's parental rights was in the child's best interests.

## II. STATUTORY GROUNDS

In her appeal, respondent-mother argues that the trial court clearly erred in finding that DHHS had established statutory grounds for termination of her parental rights.

"We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence . . . ." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 4. "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citations omitted).

MCL 712A.19b(3) states, in relevant part:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

"Once a statutory basis for termination of parental rights has been demonstrated, the trial court must terminate parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child." *In re Lombard*, ___ Mich App at ___; slip op at 5.

Based on our review of the record, we conclude that the trial court did not make a clear error in finding clear and convincing evidence that the conditions which led to the initial dispositional order continued to exist for more than 182 days. Additionally, we concur with the trial court's findings that it was not reasonably likely for the conditions to be fixed within a reasonable time, considering the age of the child. MCL 712A.19b(3)(c)(*i*). "The conditions that led to adjudication continue to exist if 'the totality of the evidence amply supports' the finding that the parent has not achieved 'any meaningful change in the conditions' that led to the trial court assuming jurisdiction of the child." *In re Lombard*, ___ Mich App at ___; slip op at 5, quoting *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Determining whether a respondent is likely to rectify the conditions leading to adjudication within a reasonable time requires consideration of both how long the parent will take to improve the conditions and how long the child can wait for the improvements. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

The trial court determined that the issues that led to termination were primarily connected to substance abuse. The trial court found that these issues were still present at the time of the termination hearing, which took place more than two years after the initial decision, as respondent-mother had been arrested for methamphetamine use between the first and second termination hearings. The trial court expressed concern that despite some periods of success, respondent-mother's overall progress was not sustainable, and the respondent-mother's situation had not improved since the beginning of the case, even though the minor child was now over three years old.

The trial court's findings are supported by the record. The caseworker's testimony established that respondent-mother's longest period of sobriety throughout the proceedings was just over a year. Respondent-mother had never provided financial support to the child, provided any care for the child, or obtained employment or stable housing. Respondent-mother also admitted that she continued to struggle with her addiction. Accordingly, the trial court did not clearly err when it found that there were grounds to terminate the respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*).[3]

III. BEST INTERESTS

Respondent-mother argues that the court did not make appropriate best-interests findings and failed to properly analyze the best-interests factors. She also contends that she still had a bond with the child, and that her requests to reinstate parenting time should not negate her ability to create a strong bond with the child. Additionally, she believes that the trial court gave improper weight to the fact that the child was placed with a relative.

This Court reviews "for clear error the trial court's . . . determination that termination is in a child's best interests." *In re Lombard*, ___ Mich App at ___; slip op at 4. See MCR 3.977(K). This Court "review[s] for an abuse of discretion the trial court's decision regarding the factors to

---

[3]Because only one statutory ground need be established to terminate parental rights, MCL 712A.19b(3);*In re Lombard*, ___ Mich App at ___; slip op at 1 n 1, we need not address the additional statutory grounds on which the trial court relied.

consider in making its best-interests determination, including the propriety of a guardianship." *Id.* "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. An error of law, such as the application of the wrong legal standard, necessarily constitutes an abuse of discretion." *Id*. (quotation marks and citations omitted).

"Once a statutory basis for termination of parental rights has been demonstrated, the trial court must terminate parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child." *In re Lombard*, ___ Mich App at ___; slip op at 5, citing MCL 712A.19b(5). To determine whether termination is in the best interests of a child,

> the trial court should weigh all evidence available to it, considering a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. [*Id*. at ___; slip op at 5-6.]

The focus of a trial court's best-interests determination must be "on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

In the trial court's assessment of the best-interests factors, the trial court found that respondent-mother had not complied with her service plan due to a series of relapses. Additionally, the court determined that she did not have a bond with the child and had not shown that she could safely parent the child. The child's well-being had been maintained by the relative placement during the proceedings, and the trial court properly concluded that the child could not be returned to respondent-mother's care within a reasonable time. Respondent-mother claimed that she had a bond with the child based on her testimony regarding parenting time visits at a park "the summer before [she] was sent to prison." However, a caseworker testified at the termination hearing that she had observed parenting time between the respondent-mother and the child on multiple occasions and that the child "very clearly didn't have a bond with [respondent-mother]." The relative placement also testified that when she supervised respondent-mother's parenting time, respondent-mother missed "probably two-thirds of the visits," and the child did not know respondent-mother. "It is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). The record reveals that respondent-mother never had a bond with the child, even before suspension of parenting time by the trial court. Caseworkers testified that the child had issues following respondent-mother's visits, and respondent mother often missed scheduled visits. On this record, we conclude that the trial court did not clearly err in finding that respondent-mother lacked a bond with the child.

Respondent-mother argues that the trial court's refusal to reinstate her parenting time made it difficult for her to form a strong bond with her child. Respondent-mother's parenting time had been suspended after she violated her probation by using methamphetamine. Additionally, respondent-mother's argument ignores statutes and case law which allow a court to suspend parenting time if it believes that even supervised visits could harm the child's life, physical health, or mental well-being. MCL 712A.13a(13); see also *In re Ott*, 344 Mich App 723, 737-739; 2 NW3d 120 (2022) (discussing suspension of parenting time, generally). Here, the trial court found

that continued parenting time would be harmful to the child when it suspended respondent-mother's parenting time. Based on the record evidence cited, the trial court's decision to suspend parenting time was not an abuse of discretion. See *In re Laster*, 303 Mich App 485, 490; 845 NW2d 540 (2013), superseded by statute on other grounds as recognized by *In re Ott*, 344 Mich App at 737-741.

Furthermore, trial courts may suspend the parenting time of a parent subject to a termination petition without further justification. *In re Ott*, 334 Mich App at 737 & n 7, citing MCL 712A.19b(4). At a permanency planning hearing following respondent-mother's incarceration for methamphetamine use, DHHS recommended the filing of a termination petition. DHHS ultimately filed a petition to terminate respondent-mother's parental rights. As respondent-mother was subsequently subject to a pending termination hearing, the trial court needed no other justification to maintain the suspension of respondent-mother's parenting time. See *In re Ott*, 334 Mich App at 737.

Respondent-mother also argues that the trial court gave improper weight to the fact that the child was placed with a relative. A child's placement with relatives weighs against termination and is a factor that the trial court must consider when making its best-interests determination. *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). The trial court recognized that the child had been living with relatives since he was two weeks old, and that the relatives had not hindered respondent-mother's efforts to reunify with her child. The court also noted that the relatives had taken on the role of parents due to the mother's inability to do so. However, the trial court found that the mother had not adequately addressed her substance abuse, secured stable housing, or financially supported the child during the three years he was in the relative's care. Additionally, the court found that the child might have special needs, which the relatives were meeting. It was clear that the placement with the relatives was better for the child, as he had been with them for all but three weeks of his life, and it was unlikely that he would be returned to the mother's care in the near future. *In re Lombard*, ___ Mich App ___; slip op at 4-5.

The trial court properly "weigh[ed] all evidence available to it" at the time, *In re Lombard*, ___ Mich App at ___; slip op at 5, and did not clearly err when it properly considered the child's placement with relatives in this case and determined that the termination of respondent-mother's parental rights was nevertheless in the best interests of the child, see *id.* at ___; slip op at 6.

Affirmed.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica