### *In re* DAHMS

Docket No. 122240. Submitted December 4, 1990, at Lansing. Decided March 5, 1991, at 9:25 A.M.

The Department of Social Services petitioned the Ingham County Probate Court for the termination of Anita Dahm's parental rights to her children, who more than 182 days earlier had been made temporary wards of the court on the basis of the respondent's neglect and abuse. The court, Donald S. Owens, J., granted the petition pursuant to MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i), finding clear and convincing evidence that the conditions that led to the children's wardship continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time, considering the children's ages. The respondent appealed.

The Court of Appeals *held:*

The probate court did not clearly err in finding that the time estimated as necessary for the respondent to achieve an acceptable level of parenting skill as a result of therapy was not reasonable in light of the children's ages or in terminating the respondent's parental rights.

Affirmed.

*Donald E. Martin,* Prosecuting Attorney, *Robert B. Ebersole,* Chief Appellate Attorney, and *James Pettibone,* Assistant Prosecuting Attorney, for the petitioner.

*Kenneth P. Tableman,* for the respondent.

Before: HOOD, P.J., and WEAVER and MARILYN KELLY, JJ.

PER CURIAM. Respondent mother appeals as of right from a September 1, 1989, order of the Ingham County Probate Court terminating her parental rights to her three children, Crystal Ann

(born October 20, 1984), Suzanne Marie (born December 10, 1985), and Robert Edward (born December 25, 1986), pursuant to MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i). We affirm.

On appeal, respondent argues that the trial court erred in terminating her parental rights where it determined that the conditions that led to the temporary wardship of her children continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time, considering the ages of the children. Respondent contends that she was not provided sufficient time within which to improve her condition, since the expert testimony indicated that with therapy she would be fairly capable of rearing her children after two to three years. Relying on *In re Mason,* 140 Mich App 734; 364 NW2d 301 (1985), respondent urges us to conclude that the trial court's findings were clearly erroneous.

In *Mason,* the respondent mother had contacted protective services, requesting assistance with her child. The treatment program established required her to complete parenting classes, to regularly visit her child, and to attend therapy. The counselor testified that he treated the respondent once a week for eight months without observable improvement, and the trial court terminated her parental rights. However, this Court held that termination was improper because it was based primarily on her failure to comply with the treatment program and the counselor's testimony that therapy for an additional six months to one year would yield little progress. We find *Mason* distinguishable on two important grounds.

Initially, we note that the record in *Mason* did not establish clear and convincing evidence of long-term neglect or of serious threats to the fu-

ture welfare of the child. Contrary to *Mason,* we find that the record below establishes clearly and convincingly that the statutory basis for termination had been established. Several witnesses testified that the three young children displayed signs of serious neglect and abuse. For example, two of the children would frequently act like wild dogs, barking incessantly and eating off their plates without using utensils. The youngest child demonstrated signs of impaired socialization, indicating an impoverished home environment, and the oldest demonstrated behavior indicative of sexual abuse. Although the bizarre behavior appeared to diminish while the children were in the custody of foster parents, the behavior patterns resurfaced following visitation with respondent. Other testimony revealed that on several occasions the children were found improperly clothed and playing in the street or in a neighbor's yard while respondent slept. Neighbors had reported all-night parties at respondent's home and that unknown male friends of respondent were mistreating the children.

Various psychologists testified fairly consistently about the children's bizarre behavior, their undersocialization, and of the existence of an impoverished home environment. The psychologists were also fairly consistent about respondent's condition and her prognosis for successful therapy. On the basis of our review of the record, we conclude that, contrary to *Mason,* clear and convincing evidence of neglect and abuse had been established.

Further, the statutory language in *Mason* did not include the phrase "reasonable time." In the instant case, respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i), which provides:

The court may terminate the parental rights of

a parent to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

*     *     *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a *reasonable time considering the age of the child.* [Emphasis added.]

This language indicates to us that the Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time. Respondent contends, however, that she was not afforded "reasonable time" within which to improve the conditions that led to the permanent wardship of her children.

In the present case, although we are aware that respondent has made progress in her therapy, we do not believe that the two to three years of therapy necessary for her to reach an acceptable level of parenting skill is reasonable considering the ages of the children and their unique needs resulting from the abuse and neglect. The testimony merely indicates that this period is a minimum during which respondent has only a "fair" chance of becoming capable to meet the needs of her children. It also must be recognized that because of the history of neglect, these young children have pervasive behavior disorders that require extensive attention. Because respondent, herself, was the product of an abusive childhood, the expert testimony indicated that the children's increased needs would be too much for respondent to

handle effectively, given her difficulty with interpersonal relationships.

We believe, therefore, that the trial court correctly reviewed the evidence in light of the statute. The trial court's decision to terminate appropriately focused not only on how long it would take respondent to improve her parenting skills, but also on how long her three children could wait for this improvement. We conclude that the trial court's findings were not clearly erroneous and that it did not err in terminating respondent's parental rights. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985); MCR 5.974(I).

Affirmed.