# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. Holt, Minor.

UNPUBLISHED
October 27, 2015

No. 326194
Kent Circuit Court
Family Division
LC No. 13-052434-NA

Before: TALBOT, C.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the termination of her parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), and § 19b(3)(g) (failure to provide proper care and custody). We affirm.

## I. BASIC FACTS

Respondent first became involved in child protective proceedings in June of 2010 in regard to two minor children who are not at issue in this case. A petition to remove the children from respondent's care cited respondent's mental health and substance abuse, including her use of opioids such as methadone, as reasons for removal. Respondent voluntarily terminated her parental rights to one of the children and the other child was placed in the custody of the child's father.

After the birth of the child involved in the instant case, petitioner filed a petition to remove the child, citing respondent's history of substance abuse and mental health issues. Following respondent's plea to the allegations contained in the petition, the trial court exercised jurisdiction over the child in October 2013 and ordered respondent to comply with a services plan. The record reveals that respondent initially made progress toward removing the barriers to reunification. Notably, she abstained from substance abuse for a period of several months. She also participated in counseling. Given these developments, as well as respondent's positive behavior during parenting time, the court returned the child to respondent's care in May 2014.

Less than a week after the child was returned to respondent's care, respondent tested positive for methadone, without a prescription. She subsequently tested positive for the drug in June 2014. At the time, respondent refused to discuss the matter with foster care workers, denied one foster care worker entry into her home, and did not make herself available to foster care workers from approximately May 27, 2014 until June 27, 2014. Thereafter, petitioner filed another petition to remove the child from respondent's care. As reasons for removal, the petition

-1-

cited respondent's drug use as well as concerns about her mental health. Respondent reported feeling "suicidal and very depressed" and had failed to follow up with some of the services to which she had been referred through various agencies.

From July through September 2014, respondent's drug use progressed to what one foster care worker described as "heavy" drug use. This use was in spite of the fact that respondent was still attending counseling and in spite of the fact that she participated in and completed a relapse prevention group program during the pertinent time period. During this time, she stopped taking her prescribed psychotropic medications. Later, in or around October 2014, respondent stopped attending counseling.

In approximately October or November 2014, respondent was referred to a detoxification center, which she was supposed to complete before she could be moved to an inpatient facility for her drug abuse. Respondent left the facility against medical advice and did not complete her treatment. Thereafter, respondent was referred to a methadone clinic. At the time of the termination hearing, respondent was still at the clinic.

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g). Respondent now appeals as of right.

## II. STATUTORY GROUNDS

Respondent first challenges the trial court's determination that there was clear and convincing evidence of statutory grounds for termination. "An appellate court 'review[s] for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding the child's best interest.' " *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014), quoting *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Gonzales/Martinez Minors*, __ Mich App __; __ NW2d __ (Docket No. 324168, issued May 5, 2015), slip op at 2 (citation and quotation marks omitted).

In order to terminate parental rights, the trial court need only find one statutory ground for termination. *In re Frey*, 297 Mich App at 244. Here, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Turning first to § 19b(3)(c)(*i*), the conditions that led to adjudication were well-documented in this case: respondent's substance abuse and her mental health issues. Although respondent made some progress in these areas, both of these conditions continued to exist far beyond 182 days after the issuance of the initial dispositional order, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time, considering the child's age. As to her drug use, respondent experienced a brief period of sobriety, but began using controlled substances almost immediately after the child was returned to her care in May 2014. This use continued and even escalated in the following months. Respondent had numerous positive drug tests during that time, and nearly all of her drug use was without a prescription. She even told her counselor that she was looking for ways to hide her drug use from petitioner, as she was trying to determine how to use methadone in ways that would not show up on her drug screens. She also tested positive for hydrocodone and marijuana as recently as October 2014. Shortly thereafter, she left a detoxification center against medical advice and admitted to using drugs. Even though respondent was in treatment at a methadone clinic at the time of the termination hearing, as recognized by the trial court, this was concerning, given respondent's history of abusing the drug and her previous statements that she knew how to obtain additional methadone from other patients at the clinic.

Respondent's mental health issues persisted well beyond 182 days after the initial dispositional order as well. The record reveals that she repeatedly failed to take her prescription psychotropic medications or that she took only one of four prescribed psychotropic drugs. Although she attended many counseling sessions—for both substance abuse and mental health issues—she stopped attending those sessions in approximately October 2014 and did not complete counseling. There were also numerous times during the proceedings when respondent reported feeling depressed and/or suicidal.

The trial court did not clearly err in finding that there was no reasonable likelihood that these conditions would be rectified within a reasonable time, considering the child's age. Not only did respondent struggle with these issues during the pendency of this case, which lasted nearly 18 months, but she also struggled with these issues in previous child protective proceedings, as her drug use and mental health sparked the earlier proceedings involving her first two children. Although she voluntarily sought out some treatment, such as the methadone clinic, she also displayed an inability to successfully complete treatment, evidenced by her recent decision to leave a detoxification clinic against medical advice and by her habitual use of methadone while she was participating in a relapse prevention group. Respondent needed to benefit from the services, not merely participate in them. See *In re Frey*, 297 Mich App at 248.

While respondent quit using substances for a period of time, she resumed using within a week of the child being returned to her care, and her use increased to "heavy use" over the next few months. And, in regard to her mental health issues, respondent repeatedly failed to take her prescribed medications throughout these proceedings, failed to complete counseling, and showed no likelihood that she would either take the requisite medications or commit to counseling.

Respondent cites the fact that she made some progress at various times during this case and contends that she needed more time to continue making progress. However, § 19b(3)(c)(*i*) speaks of a "reasonable time" for parents to rectify the conditions that led to adjudication, and "indicates to us that the Legislature did not intend that children be left indefinitely in foster care . . . ." *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991). Here, respondent had nearly 18 months, and as the trial court recognized, the progress that she made "disintegrate[d]," as the proceedings progressed and she returned to drug use. Given respondent's repeated struggles, the trial court did not clearly err in finding a reasonable likelihood that she would be unable to rectify the conditions that led to adjudication within a reasonable time, given the child's age. See MCL 712A.19b(3)(c)(*i*).[1]

Respondent contests that adequacy of the services provided to her during the course of these proceedings, arguing that she should have been given a referral for a third psychological evaluation. "While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. Here, petitioner made respondent two referrals for psychological evaluations; however, respondent failed to attend either referral. As a result, the agency that was to perform the evaluation would not schedule a third appointment. Given that respondent failed to participate in the referrals when they were offered, as well as her failure to participate in or complete numerous other services that were offered, her argument as to the adequacy of the services offered does not rise to the level of plain error. See *id.* In addition, a foster care worker testified at the March 5, 2014 dispositional review hearing that respondent eventually attended some type of psychological evaluation. There is no merit to respondent's contention that the services offered were inadequate.

---

[1] Respondent does not expressly challenge the trial court's findings under § 19b(3)(g). However, for many of the same reasons, we find the trial court did not clearly err by finding that petitioner established grounds for termination under this subsection. Respondent continually struggled to comply with the terms of her agency agreement, particularly in regard to substance abuse and mental health treatment, which is evidence of her inability to provide proper care and custody. See *In re Gonzales/Martinez Minors*, __ Mich App at __, slip op at 3. Indeed, respondent struggled with substance abuse and mental health issues for nearly all of the child's life. Given the repeat nature of respondent's struggles, the trial court did not clearly err in finding that there was no reasonable likelihood that she would be able to provide proper care and custody within a reasonable time.

## III. BEST INTERESTS

"We review for clear error the trial court's determination regarding the [child's] best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "[I]f the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez Minors*, __ Mich App at __, slip op at 4, citing MCL 712A.19b(5).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (citations and quotation marks omitted).]

The trial court did not clearly err in finding that termination was in the child's best interests. Respondent had a long history of substance abuse and mental health issues. These struggles began before the instant proceedings and led to respondent voluntarily terminating her parental rights to another child in 2012. Despite numerous attempts at rehabilitation, respondent struggled to maintain sobriety. Her behavior demonstrated an inability to benefit from the services offered. And, whenever respondent started to make progress, she relapsed. Most significantly, less than a week after the child was returned to her care, she began using controlled substances again. This touched off an extended streak during which time respondent's drug use increased to the point where it was described as "heavy" drug use. Respondent stopped taking her prescribed psychotropic medications and admitted to having suicidal thoughts on multiple occasions. Children are not expected to remain forever in limbo during child protective proceedings. See *In re Dahms*, 187 Mich App at 647. Rather, as the trial court aptly recognized, the need for permanence is important in a best-interests analysis. See *In re White*, 303 Mich App at 713-714. The child was in foster care for almost the entirety of his 18-month life, and he required permanence and stability, something respondent was not able to provide, given her continued struggles with substance abuse and mental health issues. While respondent at times made progress toward eliminating the barriers to reunification, she ultimately failed to show sufficient progress in the nearly 18-month pendency of this case. The trial court's best interest determination was not clearly erroneous. See *In re Frey*, 297 Mich App at 248-249 (holding that although the respondents showed some compliance with services, their inability to effectively parent the child within a reasonable period of time demonstrated that the trial court's best interests determination was not clearly erroneous).

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael F. Gadola