# STATE OF MICHIGAN

# COURT OF APPEALS

In re BUGGS, Minor.

UNPUBLISHED
September 27, 2018

No. 341592; 341597
Genesee Circuit Court
Family Division
LC No. 06-121134-NA

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father J. Buggs and respondent-mother E. Aguilar each appeal by right the trial court's order terminating their parental rights to the minor child. Both respondents argue that the trial court erred in finding that the statutory grounds for termination, MCL 712A.19b(3)(c)(*i*), (g), and (j), were established by clear and convincing evidence, and in finding that termination of their parental rights was in the child's best interests. Because we conclude that the trial court did not clearly err, we affirm the trial court's orders.

## I. STANDARD OF REVIEW

The petitioner bears the burden of proving a statutory ground for termination by clear and convincing evidence. MCL 712A.19b(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). Once the petitioner has proven a statutory ground, the trial court must order termination of parental rights if doing so "is in the child's best interests." MCL 712A.19b(5). This Court reviews for clear error a trial court's decision that a statutory ground for termination has been proven by clear and convincing evidence and the trial court's decision regarding a child's best interests. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357. A decision is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). Clear error signifies a decision that strikes this Court as more than just maybe or probably wrong. *In re Trejo*, 462 Mich at 356.

## II. STATUTORY GROUNDS FOR TERMINATION

### A. MCL 712A.19b(3)(c)(*i*)

A trial court may order termination of parental rights under MCL 712A.19b(3)(c)(*i*) if the evidence clearly and convincingly establishes:

-1-

The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Approximately 12-1/2 months had elapsed between the trial court's entry of an initial dispositional order and the commencement of the termination hearing. The trial court exercised jurisdiction over the children on November 15, 2016, on the basis of respondents' no contest pleas to allegations in the petition. They did not dispute that in October 2016, the police raided the family home, found cocaine, heroin, marijuana, needles, "and other drug paraphernalia" in the vicinity of the children, and found two 16-year-old children with "automatic weapons and handguns." Also on November 15, 2016, the court ordered respondents to follow the recommendations of a psychological evaluation and demonstrate improvement, obtain a substance abuse evaluation, attend random drug screening, attend parenting education courses, participate in infant mental health services for the child, maintain proper housing and a legal source of income, maintain contact with the caseworkers, and attend parenting times.

The caseworker, Felisha Glutsch, testified that respondent-mother participated in a psychological evaluation, which recommended that she avoid taking substances and address her longstanding substance abuse problems. Although she completed two substance abuse treatment programs, she repeatedly tested positive for controlled substances after she finished the programs. Respondent-mother failed to appear for 15 screens, tested negative on 99 occasions, and tested positive 37 times, including a November 3, 2017 positive test for cocaine and marijuana. Glutsch referred respondent-mother for a third substance abuse treatment course, but respondent-mother did not provide documentation of her participation. Respondent-mother completed a regular parenting course, but she refused one-on-one parenting assistance. Although respondent-mother regularly attended parenting time sessions and shared a loving bond with the child, Glutsch concluded that respondent-mother had not benefitted from the parenting course in light of her continued positive drug screens. Respondent-mother never had a regular source of income. In December 2017, she was incarcerated because of criminal charges arising from the October 2016 drug raid.

Respondent-father underwent a psychological evaluation that recommended he not use substances and "address parenting and substance abuse in a long-term individual counseling program." Still, he routinely tested positive for substances, failed to attend individual counseling, and did not participate in substance abuse treatment. Respondent-father was scheduled to submit 80 drug screens between November 2016 and July 2017, the date of his incarceration on charges arising from the October 2016 drug raid. He missed five screens, tested negative 44 times, and positive on 31 instances, including a screen for cocaine in July 2017. Respondent-father completed parenting classes, but neither did he benefit from them given his continued positive drug screens after the classes. Until respondent-father's incarceration in July 2017, he regularly attended parenting times and shared a bond with the child. At the time of respondent-father's incarceration, he no longer had an income source. He was incarcerated on charges arising from the October 2016 drug raid and was to be released in March 2018.

Glutsch testified that respondents were planning to care for the child in the same home where they had lived previously. The home was appropriate physically, but it was inappropriate because it had an occupant whom respondents refused to identify; they still used drugs, and it had been recently raided as a drug house. Glutsch and respondent-mother testified that respondents declined to participate in a more intensive program of services, which would have in included more support from parenting partners. Glutsch recommended that respondent-mother take the child to participate in mental health services in August 2017 because the child was misbehaving after parenting times. She failed to enroll the child in mental health services. Glutsch investigated many potential relative placements, all of whom had criminal histories or prior abuse and neglect issues that rendered them inappropriate for the child. The child was strongly bonded to her foster parents. Glutsch recommended the termination of respondents' parental rights in light of their long drug abuse histories, their inability to successfully address their substance abuse issues, their failure to improve their parenting skills, the child's youth, and the child's strong need for permanency and stability.

Despite her recent positive drug screen, respondent-mother denied having a substance abuse issue currently, but remained willing to enroll in residential treatment if the court ordered her to participate in additional services. She completed the intake for a different drug screening and treatment program in September 2017, but she could not continue the program after her incarceration in November 2017. After her release from prison, she planned to care for the child at the home she rented shortly before her incarceration, obtain employment cleaning limousines, complete a residential drug treatment program, and provide the child with good care.

Respondent-father, who was 56 years old at the time of the termination hearing, admitted having a substance abuse history since he was 25 years old, including several criminal convictions for drug-related offenses. Despite his positive drug tests during the pendency of these proceedings, he claimed to have recently gained control of his substance abuse habit because he loved the child "more than anything." He intended to avoid drugs and participate in any additional services that the trial court required before it returned the child to his custody.

We are satisfied that clear and convincing evidence showed that the conditions leading to the child's adjudication in November 2016 continued to exist in December 2017, primarily respondents' use of controlled substances, with no reasonable likelihood that these conditions would be rectified within a reasonable time. Both respondents have lengthy histories of substance abuse. Respondents' successful participation in substance abuse treatment was central to their treatment plan. Respondent-mother completed two substance abuse programs, and respondent-father failed to complete any treatment program; however, both respondents continued to test positive for prohibited substances. Respondents planned to care for the child in the Flint house where they had resided before this proceeding began, but an unidentified occupant was also living there. Respondent-father had been receiving monthly Social Security payments, which ceased at the time of his incarceration. Respondent-mother never established a regular source of income. Respondents completed parenting classes, but according to the caseworker, they failed to benefit from those classes because of their continued abuse of controlled substances and failure to seek infant mental health counseling for the child.

In addition, considering the more than 10-year history of respondent-mother's abuse of cocaine and heroin, respondent-father's approximately 30-year history of using cocaine and

marijuana, their minimal progress addressing their substance abuse issues during this child protective proceeding, homelessness, and failure to supervise siblings of the child in this proceeding, we agree that no reasonable likelihood existed that they might improve their parenting skills within a reasonable time. See *In re LE*, 278 Mich App 1, 27-28; 747 NW2d 883 (2008); *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991).

The trial court did not clearly err in finding clear and convincing evidence supported termination of respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*).

## B.  MCL 712A.19b(3)(g)

Under MCL 712A.19b(3)(g), a trial court can terminate a respondent's parental rights "if the court finds, by clear and convincing evidence," that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Abundant evidence established respondents' failure to properly care for, protect, and supervise the child, and the unlikelihood that they might improve their parenting skills within a reasonable time.

Clear and convincing evidence proved that respondents failed to provide proper care and custody. The trial court exercised jurisdiction over the child because in October 2016, police officers found in or near the family house cocaine, firearms, heroin, needles, drug paraphernalia, and bullet holes. Clear and convincing evidence also proved the unlikelihood that respondents might rectify their parental shortcomings within a reasonable time in light of the child's age. *In re LE*, 278 Mich App at 27-28; *In re Dahms*, 187 Mich App at 647-648. Both respondents have a long-standing history of substance abuse. In May 2006, petitioner substantiated allegations that respondent-mother and the child's siblings had been evicted from their housing because of respondent-mother's cocaine abuse. As discussed regarding the propriety of termination under MCL 712A.19b(3)(c)(*i*), clear and convincing evidence established that despite the trial court's allowance of more than 12 months for respondents to rectify the primary obstacles to proper parenting, including completion of a program to treat their substance abuse problems and drug screens, they demonstrated insufficient improvement in all of these areas. Meanwhile, the young child had languished in foster care for more than a year; he required permanency and stability. Accordingly, the trial court did not clearly err in finding clear and convincing evidence warranting termination of respondents' parental rights pursuant to MCL 712A.19b(3)(g).

## C.  MCL 712A.19b(3)(j)

A trial court also can terminate parental rights if the evidence clearly and convincingly establishes that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). The event precipitating this child protective proceeding involved the existence of cocaine, firearms, heroin, needles, and drug paraphernalia around the family home in October 2016. Clear and convincing evidence also established that for more than 12 months after the court entered its initial dispositional order, respondents failed to significantly improve their lengthy histories of abusing controlled substances. We detect no clear error in the trial court's conclusion that clear and convincing evidence established the likelihood that the child remained

at risk of potential emotional and physical harm if returned to respondent's care. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

## III.  BEST INTERESTS

"Even if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children. MCL 712A.19b(5)." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (Citation and quotation marks omitted).]

The trial court did not clearly err in finding that termination of respondents' parental rights served the child's best interests. The testimony agreed that respondents loved the child; the child felt bonded to them, and respondents properly interacted with the child at the supervised parenting times. But respondents neglected to address their long histories of abusing substances, which prevented them from properly parenting the child. Respondents also demonstrated poor parenting in ignoring a court order to enroll the child in infant mental health services. The very young child had lived in foster care for most of her life, and she had strong needs for finality, permanency, and stability. Accordingly, the trial court did not clearly err in finding that termination of respondents' parental rights served the child's best interests.

We affirm.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood