*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. ABRAHAM, Minor.

UNPUBLISHED
November 21, 2024
1:24 PM

No. 370462
Genesee Circuit Court
Family Division
LC No. 15-132100-NA

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

In this case involving the termination of respondent-mother's parental rights to her minor child, KKA, we must determine whether petitioner, the Department of Health and Human Services (DHHS) made reasonable efforts to reunify KKA and respondent-mother, whether clear and convincing evidence established statutory grounds to terminate her parental rights, and whether termination was in KKA's best interests. We find no error in the trial court's rulings and we, therefore, affirm.[1]

## I. FACTUAL BACKGROUND

The DHHS worked with and provided services for respondent-mother since KKA was born with drugs in his system in May 2021, and it had ongoing concerns about respondent-mother's illegal substance use and domestic violence in the home. On February 6, 2022, KKA was hospitalized with significant bruising on his back and face. Hospital staff also reported that KKA was unresponsive and they needed to use Naloxone[2] to revive him. Respondent-mother stated that

---

[1] The trial court also terminated the parental rights of KKA's father, but he is not a party to this appeal.

[2] According to the Centers for Disease Control and Prevention, Naloxone is a medication used to reverse the effects of drug overdoses. CDC, *Overdose Prevention*, <https://www.cdc.gov/overdose-prevention/reversing-overdose/about-naloxone.html> (accessed October 28, 2024).

KKA's father inflicted his injuries and a drug test revealed that respondent-mother had methamphetamine, cocaine, and buprenorphine in her system. The court placed KKA in a foster home, authorized the DHHS petition, and ordered respondent-mother to obtain suitable housing, maintain a legal source of income, and to participate in services through the DHHS, including substance abuse treatment, a psychological evaluation, random drug screens, parenting classes, and supportive visitation.

During the case, KKA was diagnosed with autism and he, therefore, had special needs. Although the DHHS did not have ongoing concerns about domestic violence over time, respondent-mother continued to struggle with substance abuse. Respondent-mother also failed to take drug tests and did not consistently participate in ordered services or parenting time with KKA. Respondent-mother underwent a psychological evaluation that showed a strong indication that respondent-mother abused prescription medication, illicit drugs, or both. The evaluator recommended that respondent-mother undergo neurological and psychiatric evaluations and that she benefit from outpatient treatment and remain sober. Despite an order that respondent-mother follow those recommendations, she did not participate in a neurological evaluation and did not follow through with other services.

After numerous referrals, respondent-mother received a psychiatric evaluation and was diagnosed with bipolar disorder and major depression. Respondent-mother initially participated in counseling, but the service was terminated because she stopped attending or communicating with the provider. The DHHS caseworkers made multiple attempts to enroll respondent-mother in substance-abuse treatment, but she repeatedly failed to proceed past the intake process. Although respondent-mother claimed that she participated substance-abuse treatment, she failed to submit to drug tests and did not provide any form of verification of her treatment. Respondent-mother submitted to one of 93 offered drug screens, although she knew that any drug screens she missed would be considered positive for substances. The one drug test respondent-mother took showed cocaine in her system. Further, after KKA was in foster care for about two years, respondent-mother gave birth to another baby who tested positive for cocaine.

Respondent-mother did well during parenting time with KKA, but the trial court suspended her parenting time when she failed to attend the vast majority of scheduled visits. When the court reinstated parenting time, respondent-mother missed 14 of 19 scheduled sessions, and the child appeared indifferent toward her at visits. The trial court initially ordered respondent-mother to participate in supportive visitation, but she attended only one session, and the service was terminated after respondent-mother had four unexcused absences. The DHHS did not resume supportive visitation services because respondent-mother failed to attend so many scheduled visits with KKA. Respondent-mother received stable Social Security income during the case and she lived at her mother's home, but she moved out around the time of the termination hearing and, at that point, respondent-mother's whereabouts were unknown.

The DHHS filed a petition to terminate respondent-mother's parental rights on August 15, 2023. Respondent-mother did not attend the termination hearing on February 14, 2024, and the trial court found by clear and convincing evidence that there were grounds to terminate her parental rights pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned

to parent). The trial court also ruled that a preponderance of evidence showed that termination of respondent-mother's parental rights was in KKA's best interests.

## II. REASONABLE EFFORTS

Respondent-mother contends that the DHHS failed to make reasonable efforts to reunify respondent-mother and KKA by failing to refer respondent-mother for a neurological evaluation, which prevented the DHHS from creating a service plan tailored to respondent-mother's specific needs. We disagree.

This Court reviews "for clear error the trial court's factual finding that petitioner made reasonable efforts to reunify respondent[] with the child. A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022) (quotation marks and citation omitted).

Absent certain aggravating circumstances not present in this case, the DHHS generally "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). As part of these reasonable efforts, the DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86, citing MCL 712A.18f(3)(d). " 'While the petitioner has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered.' " *In re Atchley*, 341 Mich App at 339, quoting *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (brackets omitted). Accordingly, "a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, 341 Mich App at 339 (quotation marks and citation omitted).

In this case, respondent-mother's initial service plan included a psychological evaluation and an order that she follow all recommendations made pursuant to that evaluation. At the initial review hearing, the caseworker reported that the psychological evaluator recommended that respondent-mother undergo a neurological evaluation, demonstrate sobriety, and benefit from outpatient treatment and psychiatric evaluation. At the following dispositional review hearing, the caseworker reported that she told respondent-mother how to complete a referral for the neurological evaluation through her primary care physician.

At a later permanency planning hearing, the caseworker informed respondent-mother that resuming parenting time would require her to participate in parenting classes, substance-abuse and mental health counseling, and the neurological evaluation. The caseworker stated that she provided respondent-mother with steps to engage with each service. Respondent-mother later reported that her doctor could not make a referral for a neurological examination. The caseworker attempted to contact respondent-mother's primary care physician but did not receive a response. The caseworker also attempted to obtain the referral for respondent-mother by contacting a neurological center and asking if the DHHS could provide respondent-mother's psychological

report instead of a referral, but the neurological center required the referral to come from a medical professional. Respondent-mother ultimately did not obtain a referral or a neurological evaluation.

At successive review and permanency planning hearings, the caseworker consistently stated that respondent-mother had not completed the neurological evaluation. The caseworker ensured that respondent-mother knew how to obtain the referral and even attempted to submit documents on her behalf. The trial court found that the DHHS "made crystal clear" that respondent-mother had the responsibility to obtain a referral from her doctor, that the DHHS could not "drag the mother" to obtain a referral, and that the DHHS made reasonable efforts to help respondent-mother get the evaluation.

Notwithstanding that respondent-mother did not ultimately obtain a referral for a neurological assessment, the record reflects that she also failed to follow through with the other recommendations from her psychological evaluation by failing to maintain sobriety or show benefit from outpatient treatment, and she continued to refuse to submit to drug testing or participate in outpatient therapy. No record evidence suggests that respondent-mother would have followed through with the evaluation or its recommendations because respondent-mother repeatedly failed to engage in services throughout this case, including parenting time visits with the child, and mental health and substance abuse counseling. The trial court did not clearly err by finding that the DHHS made reasonable efforts to provide services to reunify respondent-mother and KKA, but that respondent-mother "refused to participate."

## III. STATUTORY GROUNDS

Respondent-mother further claims that the trial court clearly erred by finding that the DHHS established statutory grounds to terminate her parental rights. Again, we disagree.

"We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence . . . ." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 4. "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citations omitted).

MCL 712A.19b(3) states, in relevant part:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

-4-

"Once a statutory basis for termination of parental rights has been demonstrated, the trial court must terminate parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child." *In re Lombard*, ___ Mich App at ___; slip op at 5.

The trial court did not clearly err by finding clear and convincing evidence that the conditions leading to adjudication continued to exist more than 182 days after the issuance of the initial dispositional order, and that it was not reasonably likely that the conditions would be rectified within a reasonable time considering KKA's age. MCL 712A.19b(3)(c)(*i*). "The conditions that led to adjudication continue to exist if 'the totality of the evidence amply supports' the finding that the parent has not achieved 'any meaningful change in the conditions' that led to the trial court assuming jurisdiction of the child." *In re Lombard*, ___ Mich App at ___; slip op at 5, quoting *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Determining whether a respondent is likely to rectify the conditions leading to adjudication within a reasonable time requires consideration of both how long the parent will take to improve the conditions and how long the child can wait for the improvements. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

The trial court found that respondent-mother's substance abuse and domestic violence led to the adjudication, and that domestic violence did not remain a concern because the man who contributed to that problem died during the pendency of the case. But respondent-mother's substance abuse continued and, nearly two years after the initial disposition, respondent-mother did not make efforts to become sober, and she could not take care of herself or a child with special needs.

The trial court's findings were supported by clear and convincing evidence in the record. KKA had drugs in his system at birth, respondent-mother tested positive for cocaine in the one drug screen she submitted in this case, and she gave birth to another child in 2023 who also tested positive for cocaine. Respondent-mother did initially engage with some services, including a psychological evaluation and reportedly some outpatient therapy, but she failed to follow the recommendations from her psychological evaluation, which were to participate in neurological and psychiatric evaluations, to demonstrate sobriety, and to benefit from outpatient services. As discussed, respondent-mother had a psychiatric evaluation and received a diagnosis of bipolar disorder, but she failed to treat her condition or show benefit from other offered services because she continuously refused to submit to drug testing or participate with verified outpatient therapy. No evidence showed that respondent-mother was sober and, because she chose not to attend the termination hearing, the trial court had no indication that she would rectify the conditions within a reasonable time.

Evidence also showed that KKA was in foster care for most of his life by the time of the termination hearing. Further, because KKA was diagnosed with autism, he needed to attend regular therapy sessions, additional medical appointments, and would need ongoing supports for his speech delay and other special needs throughout his life. Respondent-mother could not provide a safe or stable home for KKA without addressing her substance abuse problems. Moreover, respondent-mother's failure to regularly visit KKA, and her failure to appear for the termination hearing itself showed that she would not provide the consistency that KKA will need to address his cognitive and emotional needs over time. Accordingly, the trial court did not clearly err when

it found that there were grounds to terminate respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*).[3]

## IV. BEST INTERESTS

Respondent-mother also argues that the trial court did not properly analyze or apply the best-interest factors, that she had a bond with KKA, and that the trial court failed to consider guardianship as an option instead of termination. We find that the trial court did not clearly err in its best interest determination.

This Court reviews "for clear error the trial court's . . . determination that termination is in a child's best interests." *In re Lombard*, ___ Mich App at ___; slip op at 4. See MCR 3.977(K). This Court "review[s] for an abuse of discretion the trial court's decision regarding the factors to consider in making its best-interests determination, including the propriety of a guardianship." *In re Lombard*, ___ Mich App at ___; slip op at 4. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. An error of law, such as the application of the wrong legal standard, necessarily constitutes an abuse of discretion." *Id.* at ___; slip op at 4 (quotation marks and citations omitted).

"Once a statutory basis for termination of parental rights has been demonstrated, the trial court must terminate parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child." *In re Lombard*, ___ Mich App at ___; slip op at 5, citing MCL 712A.19b(5). To determine whether termination is in the best interests of a child,

> the trial court should weigh all evidence available to it, considering a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. [*Id.* at ___; slip op at 5-6.]

The focus of a trial court's best-interests determination must be "on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

The record reflects that respondent-mother's bond with KKA weakened because she failed to attend most of her scheduled parenting time visits. Although respondent-mother did well during those visits she attended, KKA showed less connection with respondent-mother because the visits rarely occurred. It was not clear error for the trial court to conclude that, by the time of the termination hearing, respondent-mother's bond with KKA was gone.

---

[3] Because only one statutory ground need be established to terminate parental rights, MCL 712A.19b(3); *In re Lombard*, ___ Mich App at ___; slip op at 1 n 1, we need not address the additional statutory grounds cited by the trial court in support of its termination decision.

Further, a parent's bond with the child is one of several factors that the trial court may consider when determining the best interests of the child. Other factors include the parent's ability to parent and compliance with the case service plan, the length of time that the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the child's need for "permanency, stability, and finality." *In re Lombard*, ___ Mich App at ___; slip op at 5-6. In making its decision in this case, the trial court also relied on evidence that respondent-mother refused to participate in services to help her become sober, she refused to follow through on various other ordered services, and she failed to appear for or participate in the termination hearing. In sum, respondent-mother failed to demonstrate that she was capable of providing a child with autism the care, permanency, stability, and finality he needs. In contrast, KKA's needs were met in his foster care placement and there was a possibility of adoption.

The trial court also did not clearly err when it determined that a guardianship would not be appropriate under the circumstances. "A trial court is not required to establish a guardianship in lieu of termination if it is not in the child's best interests to do so." *In re Lombard*, ___ Mich App at ___; slip op at 6, citing MCL 712A.19a(9)(c). A guardianship is appropriate only after the trial court has found "(1) 'that the child cannot be safely returned to the home,' (2) that termination of parental rights is 'clearly not in the child's best interests[,]' and (3) 'that it is in the child's best interests to appoint a guardian.' " *In re Lombard*, ___ Mich App at ___; slip op at 6, quoting *In re TK*, 306 Mich App 698, 707; 859 NW2d 208 (2014) (alteration in *In re Lombard*).

In this case, the DHHS approved respondent-mother's cousin for placement, but respondent-mother asked that KKA remain in his licensed foster care placement instead. Thereafter, respondent-mother raised no claim that a guardianship should be considered for KKA. Further, a guardianship was not appropriate because the trial court correctly determined that termination was in KKA's best interests. See *In re Lombard*, ___ Mich App at ___; slip op at 4, 6.

Affirmed.


/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett