*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BR, Minor.

UNPUBLISHED
May 12, 2025
9:50 AM

No. 370614
Menominee Circuit Court
Family Division
LC No. 20-000017-NA

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Respondent-mother appeals by right the order of the trial court terminating her parental rights to the minor child, BR, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent).[1] Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In August 2020, the Department of Health and Human Services ("DHHS") petitioned the court to remove BR from respondent-mother's care, alleging that BR drank bleach when respondent-mother left him unattended with the open bottle. DHHS also alleged that respondent-mother was impaired at the time BR drank bleach and after emergency services took BR to the hospital. Respondent-mother exhibited concerning behavior while BR was in the hospital and during an initial investigation by Children's Protective Services ("CPS") but denied having a substance-abuse problem. The trial court authorized DHHS's petition, and DHHS removed BR from respondent-mother's care. BR was initially placed in a foster home before DHHS placed him with his maternal grandmother. However, DHHS later removed BR from the relative

---

[1] The trial court also terminated respondent-father's parental rights during the proceedings, but he is not a party to this appeal.

placement because the grandmother repeatedly violated DHHS's safety plan, and DHHS returned BR to his foster home.

DHHS eventually petitioned the trial court to terminate respondent-mother's parental rights to BR under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). At the termination hearing, respondent-mother's caseworker and BR's court-appointed special advocate ("CASA") testified about respondent-mother's lack of participation in services and lack of progress for a majority of the proceedings. Respondent-mother's caseworker testified that the barriers to reunification that existed at the outset of the case still existed at the time of the hearing, and she did not believe additional time or services would allow respondent-mother to rectify these barriers in a reasonable amount of time. The trial court found that DHHS had established by clear and convincing evidence that termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) and that termination of respondent-mother's parental rights was in BR's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

We review for clear error a trial court's finding that a statutory ground for termination of parental rights has been proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted). We give deference to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

In addition, we review "for clear error the trial court's determination regarding the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted). A finding is clearly erroneous when, "although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

## III. STATUTORY GROUNDS

Respondent-mother argues on appeal that the trial court clearly erred when it concluded there was clear and convincing evidence supporting the statutory grounds cited in support of termination. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). The trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) if it finds that "182 or more days have elapsed since the issuance of an initial dispositional order" and finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

Termination under MCL 712A.19b(3)(c)(*i*) is appropriate if "the totality of the evidence amply supports that [respondent] had not accomplished any meaningful change in the conditions"

leading to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). The determination of what constitutes a "reasonable time" for purposes of MCL 712A.19b(3)(c) requires consideration of both how long the parent will take to improve the conditions and how long the child can wait for the improvements to occur. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

In the present case, the record supported the trial court's findings that more than 182 days had elapsed since the court issued its initial dispositional order, that the conditions that led to the adjudication continued to exist, and that there was no reasonable likelihood that respondent-mother would rectify the conditions within a reasonable time given BR's age. See MCL 712A.19b(3)(c)(*i*). The conditions that led to adjudication were primarily substance abuse, parenting skills, communication skills, employment, and resource management. After BR's removal, DHHS offered respondent-mother numerous services for more than 30 months, but respondent-mother failed to participate in and benefit from many of the services. For example, the DHHS caseworker and CASA representative both referred respondent-mother to parenting classes and parenting programs, but she did not engage with any parenting classes or programs, she did not complete the parenting handbooks, and she missed more than half of her parenting-time visits with BR. Respondent-mother failed to maintain stable employment throughout the proceedings and did not report many of her jobs to her caseworker. At her termination hearing, respondent-mother testified that she had full-time employment with benefits, but the court later determined that respondent-mother was dishonest about it. In addition, throughout the proceedings, respondent-mother's caseworker could not reliably reach respondent-mother by phone, and respondent-mother's caseworker struggled to locate respondent-mother as she cycled in and out of jail.

Respondent-mother did engage with substance-abuse treatment from August 2022 to March 2023, but the record reflects that respondent-mother still did not comply with or benefit from this service, as she frequently tested positive for substances and did not provide her caseworker with proof of her valid prescriptions. Respondent-mother's caseworker sent her substance-abuse workbooks to complete while she was incarcerated, but she did not complete them. Respondent-mother was dishonest with her substance-abuse treatment counselor about her substance abuse and she did not attend any substance-abuse treatment meetings.

While respondent-mother did consistently engage in treatment and therapy for a period of three months, her counselor ended the treatment after respondent-mother stopped attending and communicating. Respondent-mother's caseworker did not believe that respondent-mother had benefited from her any of the services because respondent-mother refused to engage with them consistently or at all. Given respondent-mother's lack of participation in services and her failure to demonstrate any benefit from the few services that she engaged with, the trial court did not clearly err by concluding that there was no reasonable likelihood that respondent-mother would rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*). And because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address respondent-mother's additional arguments regarding the court's decision to terminate her parental rights under MCL 712A.19b(3)(c)(*ii*), (g), and (j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

## IV. BEST INTERESTS

Respondent-mother also argues that the trial court clearly erred when it concluded that terminating her parental rights was in BR's best interests. We disagree.

If the court finds that the petitioner has established one or more grounds for termination of parental rights by clear and convincing evidence, the court must order termination of the parent's parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5); *Brown/Kindle/Muhammad Minors*, 305 Mich App at 637. The child, not the parent, is the focus of the best-interests determination. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). When making its determination, the trial court may consider a variety of factors:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

Respondent-mother argues that the trial court improperly considered her compliance with her case service plan, asserting that compliance could only be considered when evaluating the statutory grounds for termination. However, the trial court may consider "the parent's compliance with his or her case service plan" when determining if termination of a respondent's parental rights is in the child's best interests. *White*, 303 Mich App at 714 (quotation marks and citations omitted). Respondent-mother also argues that the trial court clearly erred by finding that termination of her parental rights was in BR's best interests because she complied with her case service plan and because she had a bond with BR. However, respondent-mother's assertion is not supported by the record, which demonstrates that respondent-mother did not comply with or benefit from most aspects of her case service plan. Respondent-mother did not engage in any services related to her parenting skills, maintain communication with her caseworker or service providers, maintain stable employment, or obtain appropriate housing for herself and BR. Respondent-mother did eventually begin substance-abuse treatment in August 2022, but her counselor terminated services because respondent-mother failed to keep her appointments or communicate with her counselor. Respondent-mother continued to use substances throughout the proceedings, she did not complete substance-abuse workbooks, and she was dishonest with her counselor about her substance abuse.

The trial court had the discretion to consider a wide variety of factors and weigh all of the available evidence. *Id*. at 713-714. The record reflects that BR was thriving in his foster care placement and was bonded with his foster parents after approximately 30 months in their care. DHHS made efforts to place BR with a relative throughout the proceedings, but the relatives were either deemed inappropriate as caregivers or they refused to be involved. Conversely, BR's foster parents prioritized his educational needs and goals.

Respondent-mother had opportunities to be involved in BR's educational development through the programs her caseworker referred her to, but she did not engage with these services. BR's foster parents were willing to adopt him if the trial court terminated respondent-mother's parental rights and respondent-father's parental rights, and BR's foster parents were willing to maintain BR's relationships with his paternal family as long as it was healthy for him. Respondent-

mother did have a bond with BR and showed him love and affection during parenting time. However, respondent-mother missed several parenting-time visits with BR, continued to engage in criminal activity, could not provide a safe or stable home for BR, and did not demonstrate an ability to make good decisions. Moreover, BR had been in his foster care placement for a significant amount of his life and needs permanency and consistency. Given respondent-mother's issues with substance abuse, emotional and mental instability, and lack of parenting skills, as well as BR's young age, his need for permanency and stability, and his likelihood of adoption, the trial court did not clearly err by finding that it was in BR's best interests to terminate respondent-mother's parental rights.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello