*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N.C. STREET, Minor.

UNPUBLISHED
June 20, 2025
2:01 PM

No. 373366
Clinton Circuit Court
Family Division
LC No. 23-031442-NA

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to his minor daughter, NCS, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

This case arose out of allegations of physical abuse and neglect by father against his minor children.[1] In October 2023, Children's Protective Services (CPS) received allegations that father whipped NCS and her half-brother, JS, with a metal-tipped belt approximately 30 times. Petitioner, the Department of Health and Human Services (DHHS) filed a petition for removal. According to the petition, NCS had run away from the home after whippings so severe that she required medical attention. NCS stated that she would receive 20 licks for bad grades and an additional lick if she wiggled. The petition further stated that the children's beds had been taken away for disrespectful behavior and that father would leave them to sleep on a hardwood floor with only a blanket. The petition further alleged that father acknowledged hitting the children as a form of disciplinary action. Father admitted that he would also require the children to stand in a

---

[1] The original petition listed NCS's half-siblings in addition to NCS. However, her half-siblings were all placed with their respective mothers. The petition was thus amended to reflect that the child protective proceedings only concerned NCS. NCS's half-siblings will only be referenced as necessary to provide context.

corner for hours at a time while he was away from the home. Father would watch the children by way of video technology to ensure that they stayed in the corner. He would threaten to beat them if they moved out of the corner. Father was subsequently charged with felony child abuse. The trial court thereafter authorized the petition.

In December 2023, father pleaded no contest to the allegations in the petition. Father's attorney submitted a police report as a summary of the facts, and father testified to support his plea. A caseworker assigned to the matter testified that NCS was placed with her godmother and was doing well in that placement. The caseworker further testified that father was referred for psychological services, a substance abuse assessment, and anger management and parenting classes. The caseworker noted that father had verified income and housing but was concerned about how his outstanding criminal charges would affect the case. The trial court ordered that reasonable efforts be made, and a permanency plan developed, with the goal of reunification. The trial court suspended father's parenting time while his criminal charges were pending. Father was ordered to comply with a case-service plan (CSP), which required him to undergo a psychological evaluation, a substance abuse evaluation, and attend anger management and parenting classes.

At a June 2024 review hearing, NCS's caseworker testified that father had stable housing but that she was unable to verify if he was attending psychological services. She confirmed that father was referred to a parenting class, but could not verify that he began the program. The caseworker continued that, although father was asked to refrain from consuming marijuana, he had tested positive for marijuana on two separate drug tests. The caseworker recommended proceeding with termination of father's parental rights to NCS. The trial court acknowledged that there was a no-contact order in place that prevented father from seeing the children. It also noted that father was not actively engaging in or benefiting from reunification services. The trial court authorized DHHS to file a petition for termination as to NCS.

Before DHHS filed a supplemental petition for termination of father's parental rights, father was convicted in the child abuse case. DHHS filed its supplemental petition for termination of father's parental rights in September 2024. A termination hearing was held in October 2024. At the hearing, a caseworker testified that at the onset of the case the barriers to reunification were parenting skills, emotional stability, and communication skills. The caseworker continued that father was sentenced to serve 365 days in jail, 180 of which would be served up front, for the child-abuse charges stemming from this case, and that father was not allowed to have any form of contact with NCS. She further noted that father had been released on bond. One of his bond conditions was to abstain from drugs and alcohol, but he repeatedly tested positive for alcohol and marijuana.

Regarding compliance with the CSP, NCS's caseworker reported that father had missed four appointments with DHHS. Father was offered referrals for anger management and parenting classes. He participated in the anger management classes, but never started the parenting classes. The caseworker also indicated that father completed a psychological assessment in April 2024. The examining psychologist believed father needed individual therapy, but that his behavior with regard to the children was unlikely to change. The caseworker testified that NCS needed stability and was in a placement that was willing to adopt her.

At the close of testimony, the trial court found by clear and convincing evidence that termination of father's parental rights was warranted under MCL 712A.19b(3)(c)(i), (g), and (j).

Further, the trial court found by a preponderance of the evidence that termination was in NCS's best interest. This appeal followed.

## II. STATUTORY GROUNDS

Father argues that DHHS presented insufficient evidence to establish the statutory grounds necessary for termination by clear and convincing evidence. We disagree.

"We review for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). Father argues that termination under MCL 712A.19b(3)(c)(*i*) was not proper because he was not given the opportunity to demonstrate his willingness and ability to make the necessary changes. Termination under Subsection (3)(c)(*i*) is proper when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. [MCL 712A.19b(3)(c)(*i*).]

Father points to his successful completion of anger-management classes and claims that he was not given time to use those new skills. NCS was removed from father's care in October 2023. The termination hearing took place in October 2024. Thus, father was given more than 182 days to rectify the conditions leading to NCS's removal. See MCL 712A.19b(3)(c)(*i*). "[T]he Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time." *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991). Father's argument that he was not given enough time to rectify the conditions that led to NCS's removal is therefore unavailing.

Father additionally failed to abide by his CSP. Father was released on bond in the child abuse case while the child protective proceedings were ongoing. As part of his bond conditions, father's CSP required him to abstain from alcohol and drug use. The trial court noted that, although father completed a substance-abuse program, he continued to test positive for marijuana and alcohol. Additionally, the record showed that father did not complete parenting classes, refused to allow DHHS to conduct a home visit, and did not respond to referrals for a psychological evaluation. Furthermore, father stated that he was participating in services only because his

children got him in trouble. The record thus shows that father failed to fully benefit from reunification services and failed to acknowledge his responsibility for bringing NCS into DHHS's care in the first instance. Under the circumstances, the trial court did not err by finding that DHHS established statutory grounds for terminating father's parental rights.[2]

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

---

[2] If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). We thus decline to address the remaining grounds for termination of father's parental rights.