*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CARTER, Minors.

UNPUBLISHED
April 30, 2026
11:00 AM

No. 376903
Genesee Circuit Court
Family Division
LC No. 22-138114-NA

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her two minor children, NC and IC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist), and (j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. BACKGROUND

In April 2022, Children's Protective Services (CPS) received a complaint for concerns of medical neglect and delay of treatment for both children. The children's paternal grandmother noticed that the children were sick and having difficulty breathing. The grandmother convinced the father that the children needed to be taken to the hospital.[2] The children were admitted into pediatric intensive care for treatment for severe respiratory illnesses. NC was in acute respiratory failure and required three hours of resuscitation. Medical staff reported that NC likely would have died if he had not received medical intervention. When hospital staff spoke to respondent about the children's conditions, she stated that the children only had coughs and runny noses when she dropped them off with the father approximately 24 hours before they were taken to the hospital.

---

[1] The children's father's parental rights were terminated in a separate order, but he is not a party to this appeal. Accordingly, "respondent" refers to respondent-mother only. Respondent-father is referred to as "the father."

[2] The children arrived at the hospital with the father and paternal grandmother, but the father reportedly left the hospital immediately after signing in the children.

Respondent was upset that the grandmother had taken the children to the hospital and did not appear to understand the severity of the situation. Through interviews with CPS investigators, respondent stated that NC had been sick on and off for nearly 1½ years and neither child had been taken for medical treatment in several months. In addition, the children were not being fed foods appropriate for their ages.

In May 2022, the Department of Health and Human Services (DHHS) filed a petition seeking removal of both children on the basis of medical neglect, improper supervision, and physical neglect. The petition was authorized, and the children were placed with a fictive-kin caregiver.[3] In June 2022, respondent pleaded no contest to allegations in the petition, and the trial court took jurisdiction over the children.[4] Respondent was ordered to obtain and maintain suitable housing and income, participate in parenting classes, and maintain communication with agency personnel. In addition, respondent was ordered to complete a psychological evaluation and follow all recommendations. The trial court granted the DHHS with discretion to manage and supervise respondent's parenting time.

Respondent initially struggled to find stable housing but eventually secured suitable housing. However, respondent never secured a stable source of income. Respondent also missed 32 of 52 scheduled parenting-time visits. As a result, her parenting time was suspended in September 2023. Before respondent's parenting time was suspended, she engaged in supportive parenting visitation services and parent-partner services. But both of these services were terminated by the providers because of respondent's noncompliance and attendance issues. Respondent maintained the absences were the result of transportation issues. The caseworker testified that respondent was provided bus passes and gas cards to facilitate her attendance.

Respondent also failed to complete parenting classes. She enrolled in a seven-week parenting course seven times but never completed the course. Each time, respondent was removed from the course because of too many missed classes. Respondent cited transportation issues. She was provided bus passes to facilitate attendance but continued to miss classes. Online parenting classes were set up for respondent to alleviate transportation issues. However, the classes were converted back to in-person because respondent had issues with her phone and could not attend the classes online. Despite being provided transportation assistance, including direct transportation from the caseworker, respondent did not successfully complete the course.

The DHHS made multiple referrals for respondent to undergo a psychological evaluation, but respondent repeatedly failed to follow through. The evaluation was eventually completed in September 2023, which was over a year after it was ordered by the trial court. The psychologist reported that respondent did not possess adequate parenting skills and listed several possible mental-health diagnoses. Testing also revealed that respondent had a below-average reading level, which indicated that she was "mentally deficient." The psychologist recommended further psychiatric and neurological evaluations. The caseworker made multiple referrals for the psychiatric and neurological evaluations, but respondent repeatedly missed her appointments.

---

[3] See MCL 712A.13a(1)(j)(*ii*).

[4] Respondent entered a no-contest plea to the allegation of "unsuitable housing."

Respondent reported issues with transportation and remembering appointment dates. Respondent was provided transportation assistance and reminders of her scheduled appointments but continued to miss her appointments.

In February 2025, the DHHS filed a supplemental petition for termination of respondent's parental rights under MCL 712A.19b(3)(a)(*ii*) (abandonment for 91 days), (c)(*i*), (c)(*ii*), (g) (failure to proper care and custody), and (j).[5] A termination hearing was held in July 2025. At the time of the termination trial, respondent had re-enrolled in parenting classes for the eighth time. Respondent had not completed a psychiatric or neurological evaluation as of the date of the termination hearing. The caseworker testified that she provided various accommodations for respondent including scheduling appointments, reminding her of appointments, and direct transportation to and from respondent's appointments. The caseworker testified that direct transportation was not a "normal" service and considered it a special accommodation for respondent specifically. The caseworker also met with respondent on a monthly basis to discuss her progress in services, upcoming scheduled appointments, and any services or accommodations that she may need. The caseworker explained that respondent's communication issues hindered the caseworker's ability to provide direct transportation at times. The caseworker testified that respondent had not requested any services or accommodations that were denied. At the time of the termination hearing, respondent had not met with the children for approximately two years. The children lived with their fictive-kin caregiver throughout the case, and their caregiver was willing to adopt both children.

The trial court found clear and convincing evidence to terminate respondent's parental rights as described above and found by a preponderance of the evidence that the termination of her parental rights was in the children's best interests. Respondent now appeals.

## III. REASONABLE EFFORTS

Respondent argues that the trial court erred by finding that the DHHS made reasonable efforts to reunify the family. We disagree.

We generally review for clear error a trial court's decision regarding reasonable reunification efforts. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). But a respondent must object to the services at the time they are offered to preserve an argument about reasonable efforts for family reunification. *Id.* at 336. "The time for asserting the need for accommodation in services is when the court adopts a service plan" or "soon afterward." *Id.* (cleaned up). "[E]ven if a parent does not object or otherwise indicate that the services were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised during the proceedings." *Id.* at 337.

Throughout the lower court proceedings, respondent's counsel argued that respondent was making progress and benefiting from the services provided. Respondent did not object or

---

[5] At the termination hearing, the DHHS argued that there were grounds to terminate respondent's parental rights under MCL 712A.19b(3) (c)(*i*), (c)(*ii*), and (j), but did not raise MCL 712A.19b(a)(*ii*) or (g).

otherwise indicate that the services were inadequate. At the termination hearing, respondent's counsel argued that she was demonstrating progress and requested more time to allow her to complete the psychiatric and neurological evaluations to explore whether additional services were needed. But she did not object to the adequacy of services that were provided. Because respondent did not raise this issue in the trial court in a timely manner, it is unpreserved. *Id*. at 336-337. Accordingly, our review is for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 258 (cleaned up). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (cleaned up). "The party asserting plain error bears the burden of persuasion with respect to prejudice." *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023).

Generally, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id*., quoting *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich at 85-86, quoting MCL 712A.18f(3)(d). In addition, DHHS also "has obligations under the ADA [Americans with Disabilities Act] that dovetail with its obligations under the Probate Code." *Id*. at 86. Once a disability is known, DHHS cannot be "passive in [its] approach . . . as far as the provision of accommodations is concerned." *Id.* at 88 (cleaned up). "Absent reasonable modifications, efforts at reunification cannot be reasonable under the Probate Code if the [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *In re Sanborn*, 337 Mich App at 264 (cleaned up).

"While the petitioner has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered. This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, 341 Mich App at 339 (cleaned up). "When challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App at 264.

Respondent fails to demonstrate that the trial court clearly erred by concluding that the DHHS satisfied its burden to make reasonable efforts at reunification, with or without necessary accommodations. The caseworker testified that the DHHS offered additional accommodations specifically tailored for respondent, including monthly meetings to evaluate what services were being provided and direct transportation for her to and from appointments. The DHHS followed the recommendations of the medical provider and scheduled multiple appointments for further psychiatric and neurological evaluations. But respondent failed to follow through despite being provided transportation assistance and reminders of her scheduled appointments.

On appeal, respondent has not articulated what additional services or accommodation may have helped her during the three-years the case was pending and has not provide evidence that she would have been able to show enough progress to properly care for her children if additional time or different services had been offered. Respondent simply makes a general allegation that the

DHHS did not ensure she completed a psychiatric and neurological assessment to determine what services and accommodations would be appropriate. "Without an identification of services to accommodate mother's . . . disability, we are left to speculate what other services the DHHS could have offered." *Id*. at 266. Viewing the record as a whole, the trial court's determination that the DHHS made reasonable efforts at reunification was not clearly erroneous and thus respondent has failed to establish any plain error.

## III. STATUTORY GROUNDS

Respondent further argues there was insufficient evidence to terminate his parental rights. We disagree.

We review a trial court's factual findings regarding statutory grounds for termination of parental rights and the decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App at 276 (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App at 32. Evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (cleaned up; alteration in original). If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] ha[s] not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), "despite time to make changes and the opportunity to take advantage of a variety of services[,]" *In re White*, 303 Mich App at 710 (cleaned up). What constitutes a "reasonable time" requires consideration of how long the parent will take to improve the conditions and how long the child can wait for the improvements to occur. See *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). "Even if conditions improved in the months before the termination hearing, a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in the conditions that led to adjudication." *In re Jackisch/Stamm-Jackisch*, 340

Mich App 326, 334, 985 NW2d 912 (2022). A respondent's failure to participate in and benefit from the services aimed at addressing the conditions that led to adjudication can necessitate the termination of the respondent's parental rights. See *In re Frey*, 297 Mich App at 248.

It is undisputed that, at the time of termination, more than 182 days had elapsed since the initial disposition order was entered. As the trial court recognized, the condition that led to adjudication was respondent's medical neglect of the children that led to their hospitalization for issues that could have been resolved with regular medical visits. Throughout the proceedings, the DHHS made referrals for supportive parenting visitation services, parent-partner services, parenting classes, psychiatric evaluation, and a neurological evaluation. Respondent participated in and benefited from some of the services the DHHS provided but ultimately failed to demonstrate substantial compliance with or benefit from the services despite the accommodations provided to respondent by the DHHS. The trial court noted that respondent had been given three years to demonstrate progress and take advantage of a variety of services that were available. On this basis, the trial court concluded that conditions would not improve despite respondent's arguments that more time was needed for her to demonstrate positive growth. The trial court determined that respondent's inability to maintain her own schedule for medical appointments demonstrated an inability to manage medical appointments for the children.

The totality of the evidence amply supports that respondent did not accomplish any meaningful change in the conditions that existed at the time of the adjudication, and there is no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. Accordingly, we are not left with a definite and firm conviction that the trial court clearly erred by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Because we have concluded that at least one statutory ground was established by clear and convincing evidence, we need not address the other statutory grounds at issue in this case. *In re Foster*, 285 Mich App at 633.

## IV. BEST INTERESTS

Respondent further argues that the trial court erred by finding that termination of her parental rights was in the children's best interest because she had a strong bond with both children. We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App at 346.

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). "[A]t the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *Id.* at 89.

"The trial court should weigh all the evidence available to determine the children's best interests," and it should consider a variety of factors, including "the child's bond to the parent, the

parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (cleaned up). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. Other considerations include the length of time the child was in foster care or placed with relatives, whether it is likely that a child could be returned to the parent's home "within the foreseeable future, if at all[,]" and whether the parent can provide a permanent, safe, and stable home. *In re Frey*, 297 Mich App at 248-249. Additionally, because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). But "the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *Id*.

Respondent argues that termination was not in the children's best interests because she held a close bond with her children before her parenting time was suspended, had suitable housing for the children, and the children were placed with fictive kin. At the time the termination hearing occurred, the children had placed with their fictive-kin caregiver for approximately three years. IC had been with the caregiver for the vast majority of her life. NC had special needs and exhibited substantial behavioral issues. The caseworker testified that the sound of respondent's voice was enough to trigger severe emotional responses from NC. NC had made significant developmental improvements in the three years since he had been placed with the caregiver. IC was meeting all her developmental milestones as well. Perhaps most importantly, the caregiver had demonstrated the ability to ensure that the children were keeping regular appointments with medical providers. The caseworker testified that both children were bonded with the caregiver and an older child who was already living in the caregiver's home. The caregiver expressed her desire to adopt the children and demonstrated an ability to provide for each child's individual needs.

The trial court determined that the children were flourishing in their fictive-kin placement. The trial court rejected the possibility of guardianship because it found more compelling the children's needs for stability, permanency, and finality. The trial court determined that the length of time that the children had been in their fictive-kin placement, their bond with the caregiver, the substantial progress that the children had made while with the caregiver, and the children's need for stability weighed in favor of termination. We conclude that a preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights to the children was in the children's best interests, and we are not left with a definite and firm conviction that the trial court made a mistake.

Affirmed.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel